## Haley's Administrator v. Chesapeake & Ohio Railway Company, et al.

(Decided January 30, 1914.)

### Appeal from Boyd Circuit Court.

1. Peremptory Instructions—When Authorized.—To authorize a peremptory instruction directing a verdict for the defendant, it must

appear that, admitting the plaintiff's testimony to be true, and every inference fairly deducible therefrom, he has failed to support his cause of action. This rule for determining when the giving of a peremptory instruction is admissible, obtains in every action for death or personal injury from negligence, whether the peremptory instruction be asked on the ground that there is no evidence conducing to show the defendant's negligence, or on the claim that the contributory negligence of the deceased or injured person is established by the evidence.

2. Railroads—How to Be Operated in a City or Town—Licensees.— It is a well-settled rule that greater care should be used in running a railroad train through a city or incorporated town, than is required in approaching a highway or crossing in the country, because of the presence of persons on the street. occupied by the railroad tracks, or their presence on the tracks. Under such circumstances those in charge of the train must use ordinary care to keep a constant lookout for persons on or crossing the track, and should reduce the speed of the train and give the customary speed signals to warn persons of approaching danger; and this rule also applies as to any part of the railroad company's right of way or any of its tracks, in a city or incorporated town, which it has licensed the public to use.

3. Negligence—Causing Sudden Peril to Another—Emergency.—If one is placed by the negligent operation of a train in sudden and unexpected peril, and, by reason thereof, the position is such that he is compelled to choose instantly some way of escaping the impending danger, and he makes such choice as a person of ordinary prudence, similarly situated, might make, the fact that if he had chosen some other means of escape he would not have been injured, is of no importance.

L. T. EVERETT and JOHN F. COLDIRON for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellees.

Opinion of the Court by Judge Settle—Reversing.

This action was instituted by appellant, as administrator of the estate of Mrs. Martha Ann Haley, to recover of the appellee, Chesapeake & Ohio Railway Company and Bolivar Wesley, its locomotive engineer, damages for her death; caused, as alleged, by the negligent operation of one of the railway company's passenger trains, of which Wesley was the engineer. Wesley died, however, before the case went to trial and the action was duly revived against his administrator.

The appellees filed a joint and separate answer, containing a traverse and plea of contributory negligence; and the plea of contributory negligence was controverted

by reply. The trial resulted in a verdict for the appellees, which was returned by the jury in obedience to a peremptory instruction given by the court, on appellees' motion, at the conclusion of appellant's evidence. Complaining of the judgment entered upon that verdict and the refusal of the circuit court to grant him a new trial, the administrator has appealed.

The question presented for decision by the appeal is: ,Was there any evidence, however slight, introduced in appellant's behalf on the trial conducing to prove that the death of the intestate was caused by the negligence of appellee Chesapeake & Ohio Railway Company's servants in operating the train by which she was struck and killed? If there was, the peremptory instruction should have been refused. C. & O. Ry. Co. v. Conley, 136 Ky., 601; Central Coal & Iron Co. v. Owens, 142 Ky., 19. In other words, to authorize a directed verdict for the defendant, it must appear that, admitting the plaintiff's testimony to be true, and every inference fairly deducible therefrom, he has failed to support his cause of action. C., N. O. & T. P. Ry. Co. v. Rule, 142 Ky., 694; Southern Ry. in Ky. v. Goddard, 121 Ky., 567  The above rule for determining when the giving of a peremptory instruction is admissible, obtains in every action for death or personal injury, from negligence, whether the peremptory instruction be asked on the ground that there is no evidence conducing to prove the negligence of the defendant, or on the claim that the contributory negligence of the deceased or injured person is established by the evidence  Tested by the foregoing rule, it remains to be determined whether the evidence introduced by appellant in the instant case authorized its submission to the jury; but before doing this it will be proper to mention certain undisputed facts explanatory of the manner in which Mrs. Haley lost her life.

The place of the accident was in the outskirts of the city of Catlettsburg, a suburb  called  Oklahoma. Mrs. Haley was struck by a passenger train running from the east towards Catlettsburg.  Within the eastern corporate limits of Catlettsburg, appellee's line of railway passes over a long fill, east of which the railroad is crossed by three public roadways, and the decedent was struck by the train about 325 feet west of the crossing nearest the fill, she being at the time on the fill and with-

in a few feet of a plank walkway that led from the fill into the yard of one George Wells, whose dwelling house stood by the side of and near the railroad. At the time she was killed Mrs. Haley, in company with her stepdaughter, Mrs. Alexander, was on her way to where her husband, a carpenter, was at work on a building close to the scene of the accident. She was taking to the husband his luncheon, contained in an ordinary dinner bucket, which she carried in her hand or on her arm. At the point of the accident there was a main-line track and on the north side of it a switch track, and Mrs. Haley and her stepdaughter were walking on the main track. The fill was practically taken up with the two tracks with barely enough space for a narrow pathway on the outer side of either track, the bank of the fill on each side being almost perpendicular. Mrs. Haley and her stepdaughter each wore upon her head a light covering known as a "fascinator," and from the time of leaving the home of the former, which was situated on the side of the railroad from a quarter to a half mile from the place of the accident, they had walked the entire distance on the railroad track. For the entire distance between the point of the accident and the decedent's home, dwelling houses were numerous on each side of the railroad, and these were all occupied by the owners or tenants thereof, who, together with the public generally, were permitted and accustomed to use at all times the track of the railway company, as did the decedent and her stepdaughter on the day the former was killed.

In addition to the foregoing admitted facts, it was shown by the evidence introduced in appellant's behalf that the train by which the decedent was killed was running at a speed of forty or forty-five miles per hour; that the view of the engineer and fireman of the train in approaching the place of the accident was unobstructed for about a half mile before the decedent was killed; that the train gave no signal of its coming either by the ringing of its bell or the blowing of its whistle, until it got within 200 or 300 feet of where it struck and killed the decedent, at which time the engine sounded the alarm whistle; that about the time the alarm whistle was given Mrs. Alexander, who was walking behind the decedent, discovered the train, which, according to her testimony, was then within 200 or 200 feet of them, and she

then said to decedent: "Lord God Almighty, Mamma, get off the track, there comes the train." At the time of thus calling to the decedent Mrs. Alexander stepped from the railroad track and slipped into the ditch beside the fill, but the decedent hurriedly walked or ran two or three steps with the evident purpose of trying to reach the walkway leading from the railroad track into George Wells' yard. From two to four steps from the walk-way she was struck by the approaching train and knocked from the track and fill. According to the further testimony of Mrs. Alexander the walk-way leading into Wells' yard was only five or six steps from the point where she discovered the presence of the train and warned the decedent of its coming, and her (Mrs. Alexander's) discovery of the train was simultaneous with the sounding of the alarm whistle, but the decedent was apparently without knowledge of the coming of the train until warned by the exclamation from Mrs. Alexander.

It is claimed in argument that the ruling of the trial court in granting the peremptory instruction was based on the rule announced in the cases of L. & N. R. R. Co. v. Trower's Admr., 131 Ky., 589; Gresham's Admr. v. L. & N. R. R.Co., 15 R., 599; Helm v. L. & N. R .R. Co., 17 R., 1004; I. C. R. R. Co. v. Willis' Admr., 123 Ky., 636; L. & N. R. R. Co. v. Taaffe's Admr., 106 Ky., 535; Craddock v. L. & N. R. R. Co., 13 R., 18; the last five cases being cited and considered in the Trowers case; but an examination of these cases will show the facts of each to be unlike those in the instant case  In the Trowers case it was held that where one who knows and sees that a train is coming, attempts to cross the track just in front of it at a station, he is guilty of contributory negligence, barring a recovery, though it was a fast special running on the time of a regular train, and he may have thought it was the regular train which was to have stopped there. In Helm v. L. & N. R. R. Co., the injured person was a volunteer assisting the station agent. There were passengers to take the train at the station, but it failed to sound the whistle announcing its approach in time for the volunteer acting for the agent to get across the track to display the signal for it to stop for the passengers; nevertheless he attempted it and was struck and injured. A verdict for the defendant was directed because of the plaintiff's contributory

negligence; the court holding that but for his negligence he would not have been injured.   In I. C. R. R. Co. v. Willis' Admr., Willis, a licensee, was upon a siding on the company's road.  Seeing a train approaching which he feared would frighten his horses that had been left upon the side of the main track in charge of his son, in an attempt to get to the horses he crossed the railroad track in front of the rapidly moving train which struck and killed him.  Upon this state of facts a peremptory instruction directing a verdict for the railroad company was properly granted on the ground that the death of Willis was due to his own negligence.  In L. & N. R. R. Co. v. Taaffe's Admr., the defense was that the decedent was guilty of contributory negligence in stepping upon or so near the railroad track in front of an approaching train so close to him that it was impossible for those in charge of the train, by the exercise of ordinary care, to stop it before striking him.  The judgment entered upon the verdict awarding the decedent's administrator damages was reversed because of error in the instructions, the court saying: "It was the duty of the decedent, if he had notice of the approach of the train to the station, to exercise reasonable care to ascertain its proximity to the station and to be careful not to expose himself to any danger by walking upon or near the track by which the train was approaching.  And it was his duty, if he heard the whistle indicating its approach to the station, to be on the lookout for the same to keep himself out of danger."

In Craddock v. L. & N. R. R. Co. it appears that Craddock while on the platform of the depot heard a train whistle for the station and saw it coming, notwithstanding which he attempted to cross the track in front of it, but at a point where he, a licensee, had a right to cross; or at any rate where the railroad company was bound to anticipate his presence.  The train was running at a negligent rate of speed but did not stop at that station; Craddock testified that he thought it was going to stop, but this, the court said "did not authorize the appellant to negligently throw himself in the way of it when he had ample warning of its approach and then claim damages for any resulting injury."

The doctrine announced in these several cases is well stated in Thompson on Negligence, 1 Sup., 27, section 186, as follows: ''When one recklessly encounters a known danger, and thereby directly contributes to his injury, he cannot escape the effect of his negligence because of the unknown negligence of defendant, which concurred to produce the injury and made the danger greater than he supposed it to be. So, when he recklessly encounters a known danger he cannot escape the effect of this rule on the ground that his action was the result of an error of judgment.''

It is manifest that the facts of the instant case do not bring it within the rule applied in the cases supra. Here the decedent did not get upon the track in front of an approaching train the coming or proximity of which was seen by or known to her. She was walking upon the railroad track where she and others living in the same suburb were accustomed and permitted by the railway company to travel in going from their homes to other parts of Catlettsburg and returning therefrom. The train by which she was killed approached from the rear and, according to the testimony of Mrs. Alexander, its coming was not known to her until communicated by Mrs. Alexander, at which time it was only two or three hundred feet distant. It is true if she had then stepped off the track and gotten into the ditch as Mrs. Alexander did she might have escaped collision with the train. The noise of the alarm whistle given at that time, together with the excited manner of Mrs. Alexander and the character of the exclamation she employed to warn the decedent of the proximity of the train, doubtless threw the latter into such a fright as to confuse her mind and cause her to believe that her only safe means of escape from the impending danger was afforded by the walkway leading from the railroad track into the yard of Wells, which was only four or five steps distant, and in attempting to reach which she was struck by the train. Apparently there were two ways of escape open to her, one by getting off the track and fill into the ditch and the other by way of the walk-way into Wells' yard. The attempt to escape by the walkway may have been and in fact was a mistake in judgment, but in view of the fact that there was evidence conducing to prove that she was put in a position of imminent danger by the negli-

gence of appellee and its engineer in running the train at an unusual and unsafe rate of speed for an incorporated town, and without maintaining a lookout ahead of the train or sounding its whistle in time or ringing its bell, it should have been left to the jury to determine whether the decedent in attempting to escape the danger by way of the walkway as she did, was guilty of negligence which so contributed to her death that but for same she would not have been killed. In other words, if the decedent was, by the negligence of appellee's servants in operating the train, suddenly and unexpectedly placed in a position of imminent danger, in attempting to avoid which, she tried to escape by the walkway into Wells' yard and in so doing used such care as an ordinarily prudent person would have used under like circumstances, she should not be held guilty of contributory negligence, even though she did not adopt the best means for her escape, or committed an error in judgment as to the best course to be pursued in attempting to avoid the danger. Geary v. McCreary, 147 Ky., 254. In Sherman & Redfield on Negligence, Vol. 1, section 89, we find this approval of the rule just stated. "In judging the care exercised by the plaintiff, reasonable allowance is made for the circumstances of the case; and if the plaintiff is suddenly put into peril, without having sufficient time to consider all the circumstances, he is excusable for omitting some precautions or making an unwise choice, under this disturbing influence, although, if his mind had been clear, he ought to have done otherwise, especially if his peril is caused by defendant's fault. If one is placed by the negligence of another, in such a position that he is compelled to choose instantly, in the face of grave and apparent peril, and he makes such choice as a person of ordinary prudence placed in such a position might make, the fact that, if he had chosen the other hazard he would have escaped injury, is of no importance." In L. & N. R. R. Co. v. Molloy's Admx., 122 Ky., 219, we said on this subject in directing the correction of an instruction that had been given by the trial court. "In lieu of the latter part of the instruction the court should tell the jury, that if the decedent, while using such means and acting as a person of ordinary prudence placed in such a position might reasonably act, was injured and killed, it was immaterial that, if he had followed some other course he

might have escaped injury.'' South Covington Ry. Co. v. Ware, 84 Ky., 267. It would seem to follow, from the foregoing authorities, that the peremptory instruction given by the trial court, in view of the evidence, was not authorized upon the ground that, as a matter of law, the decedent was guilty of contributory negigence which prevented a recovery. The facts relied on by appellant as establishing the negligence of appellee's servants in charge of the train by which the decedent was killed, were furnished by the testimony, not only of Mrs. Alexander, but also by that of C. C. Haley, the husband and administrator of the decedent, J. C. Richardson and William Wells. These witnesses all testified that the death of the decedent occurred in an incorporated city of five thousand people and in a well populated community; that the track where the decedent was walking and killed has been used by the public with the knowledge and consent of the railway company and its employes continuously since 1881; that the track is straight for about a half mile east of the place of the accident and that there was nothing upon or along the railroad that could have obstructed a view of the decedent for this distance from the appellee, railway company's servants operating the train; that the train was running at a speed of forty to forty-five miles an hour, which was unusual and unsafe in an incorporated town; and that it failed to give any signal of its approach, other than the alarm signal at the end of the switch, or to moderate its speed before striking and killing the decedent. In our opinion the testimony of these witnesses on the question of whether the servants of the appellee railway company were guilty of negligence should have been regarded by the trial court as sufficient to take the case to the jury.

It is insisted for the appellees that there was no evidence that those in charge of the train discovered the decedent's presence on the track in time to have prevented injury to her. It is true that no witness was able to testify, or did testify, that the decedent was actually seen on the track by those in charge of the train in time to have prevented her death, but this contention disregards the evidence furnished by them to the effect that the track was clear of obstructions for nearly a half mile east of the place of the accident; that there was nothing

to have prevented those in charge of the train from seeing her in time to have given timely warning of the approach of the train by the sounding of the whistle or ringing of the bell, and that such warning was not given; indeed, that there was no signal from the train until the alarm whistle was sounded after the engine got within two or three hundred feet of the decedent and at a point where it could not have been stopped before striking her. This evidence, together with the fact that appellees owed the decedent a lookout duty, and that they should have anticipated her presence on the track, presented facts from which the jury might have inferred negligence on the part of appellee railway company and its servants. If the engineer had given proper signals for any of the several crossings before reaching the fill, or reduced the running of the train to such a speed as would have been reasonably safe to pedestrians licensed to use the railway company's right of way at the place of the accident, it is highly probable that the decedent would not have been killed. In I. C. R. R. Co. v. Murphy, 123 Ky., 787, Murphy was unaware of the approaching train that struck him, while those in charge of the train for quite a distance saw or could, if maintaining a lookout, have seen him, but did not slacken the speed of the train. We held that running the train at a high rate of speed through a populous community, a city of more than two thousand inhabitants, was negligence as to licensees, even trespassers, whose presence was known or should, from the circumstances of constant use, have been anticipated. On the same subject we said in C. & O. Ry. Co. v. Booth, 149 Ky., 245:

"We have repeatedly held that in cities and towns where the population is dense, and a street is occupied by the tracks of a railroad company, the latter is bound to operate its trains, both day and night, at a moderate rate of speed, give the customary notice of their approach, maintain a proper lookout, and take such other precautions, as circumstances and the exercise of ordinary care, may require for the security of life. L. & N. R. R. Co. v. McNary's Admr., 128 Ky., 408; I. C. R. R. Co. v. Flaherty, 139 Ky., 147; L. & N. R R Co v. Potts, 92 Ky., 30; L. & N. R. R. Co. v. Cummins' Admr., 111 Ky., 333; Rader's Admr. v. L. & N. R. R. Co., 126 Ky., 722; L. & N. R. R. Co. v. Trisler, 140 Ky., 447. In I. C. R. R.

Co. v. Flaherty, supra, it appears that the plaintiff when struck by the train was walking on the railroad track, where persons were licensed to go and accustomed to use it, and although he could easily have stepped off the track and out of the way of the train had he seen it or been warned of its coming, it was held that neither this fact nor his failure to look for the train, authorized a peremptory instruction for the railroad company, as there was evidence conducing to prove that no lookout was maintained by the engineer or fireman of the train, and that by a proper lookout they could have discovered his danger in time to have warned him thereof and prevent the train from striking him; in other words, it was held in that case that the question whether the plaintiff was guilty of contributory negligence was for the jury.

While appellee, by turning his head, would doubtless have seen the approaching train in time to have avoided his injuries, it cannot be said that his failure to do so was per se negligence; nor did such failure relieve appellant and those in charge of the train from the duty of exercising ordinary care to discover his presence, and like care to avoid injuring him. This duty should have been performed by maintaining a proper lookout from the engine and giving the customary signal of the approach of the train. If those in charge of the train failed to maintain a lookout or to give the necessary signals, such failure constituted negligence; and if by reason thereof appellee was injured by the train, he was clearly entitled to recover.''

In McCabe's Admx. v. Maysville & Big Sandy R. R. Co., etc., 28 R., 536, we held that it is a well settled rule that greater care should be used in running trains through a town than is required to be exercised in approaching a highway or crossing in the country, because of the passing of persons on the street or the railroad track. Under such circumstances those in charge of the train must use ordinary care to keep a constant lookout for persons crossing the track and should reduce the speed of the train and give the usual signals to warn persons of approaching danger. In C. & O. Ry. Co. v. Montjoy's Admr., 148 Ky., 279, Montjoy, an employee, placed a tricycle on the railroad track and started toward Olympia against the protest of his superior, who informed him that a fast train then due was a little behind

and liable to come along at any time. In spite of this warning Montjoy continued upon his journey but had gone only a short distance when the train came along. The engineer gave the required signals and moderated the speed of the train but Montjoy, who looked back and saw the train coming continued upon the track to the depot at Olympia. There he left the tricycle, looking back at the train as he did so and continued to remain on the track until the train struck and killed him. Although the engineer slackened the speed of the train he failed to stop it in time to prevent striking Montjoy. On the contrary he increased its speed after discovering that he was not going to leave the track. Notwithstanding the negligence of Montjoy, his administrator recovered judgment in the lower court and the judgment was affirmed by this court. In the opinion it is said: "While it must be conceded that Montjoy was a trespasser upon appellant's track and guilty of the grossest negligence in thus racing with an express train, it was, nevertheless, the duty of appellant's servants to use all reasonable means at their command to avoid injuring Montjoy after they discovered his peril."

Because of the error committed by the trial court in giving. the peremptory instruction, the judgment is reversed and cause remanded for a new trial consistent with the opinion.