## West Kentucky Coal Company v. Parker's Administrator.

(Decided May 10, 1929.)

(As Modified, on Denial of Rehearing, June 21, 1929.)

WHEELER &' HUGHES for appellant.

BEN S. ADAMS for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—
Reversing.

The appellant, West Kentucky Coal Company, owns
and operates on the Ohio and Mississippi rivers a large
towboat called the "Charles F. Richardson"; the appellant, Fred McCandless, was, and had been for a number
of years prior to the accident herein referred to, master
of the boat. In July, 1927, the boat, with a tow of 26
barges of coal, left Paducah, Ky., bound for Vicksburg,
Miss., with Captain McCandless in charge. The boat and
tow reached Laconia, Ark., between 5 and 6 o'clock on the
afternoon of July 15th, and proceeded to tie up for the
night. When it moved into the river bank for that purpose, two lines were run from the barges, and another
line was run from the boat to the river bank, and tied to
trees. Captain McCandless was in charge of and directing the landing operations, and, when these lines were
run out and tied, he advised the pilot of the boat that all
was fast, and the pilot signaled the engine men to stop
the engine. The captain then went to his supper. The
wind was blowing off shore, and this caused the head, or
front, of the tow to drift out from the bank. Decedent,
who was at the time, acting as mate, directed some of the
"roustabouts" to attach a line to the capstan of the boat
(referred to in the record as the "niggerhead") and to
carry the line across the barges, wind it around a timberhead, and to then carry the line to a tree on the river
bank and tie it.

A "timberhead" is a wooden standard 12 to 14
inches square standing above the top of the barge. There
are 12 to 15 timberheads on each barge. Decedent was at
this time standing on the line deck of the fuel flat. A
"line deck" is a narrow platform at each end of a barge,
and some 12 to 18 inches wide; a "fuel flat" is a barge

of coal used to supply the engines of the boat. When the line was run from the capstan to the timberhead, and then to a tree on the river bank, the end of the line on the bank was considerable higher than the timberhead; and, when the capstan started revolving, for the purpose of tightening the line and thus drawing the head of the tow into the river bank, the line slipped over and off the timberhead, and, in its rebound, struck decedent, who was standing nearly opposite the angle formed by placing it over the timberhead, and he was knocked into the barge, causing injuries from which he died four days thereafter. The place at which decedent was standing put him in what is spoken of by the witnesses as "bite of the line." Conceiving that the injury and death were the result of appellant's negligence, appellee instituted this action under the Federal Employers' Liability Act (45 USCA secs. 51-59), to recover compensation for the decedent's dependents. He recovered a verdict for $4,-000, and, from the judgment thereon, this appeal is prosecuted.

The negligence complained of is that McCandless, as captain of the boat, directed decedent to tie up the boat and tow; that, while he was at the place where ordered by the captain to work, appellants by gross negligence and carelessness in the operation of the "boat, barges, rope and capstan, caused said rope to be thrown against decedent and to strike him and inflict upon him the injuries from which he died; that defendants, by their gross negligence and carelessness, failed to provide him with a reasonably safe place in which to work, or reasonably safe and proper tools, and appliances with which to work"; and that appellant McCandless was directing the "work in which decedent was engaged at the time he received the injuries from which he died, and by the exercise of ordinary care was in the position to know and did know, observe and appreciate the danger which decedent was in, and that he was in an unsafe and dangerous place in which to work and that the tools, appliances, rope and ropes with which decedent was working, were unsafe and dangerous, and failed to warn decedent of his danger or to cause the rope or ropes to be loosened." In an amended petition, after reiterating the allegations of the original petition, it is alleged that decedent's injuries were the direct and proximate result of the gross negligence and carelessness of the defendants, their servants, agents, and employees in charge of the boat.

Reduced to its last analysis, the gravamen of the complaint is that decedent was provided an unsafe place in which to work, unsafe tools with which to work; and that appellants knew, but negligently failed to warn him, of the danger to which he was exposed.

After traversing the allegations against them, appellants pleaded that the decedent provided his own place in which to work, and the methods of doing the work; that those employed with him were under his control and direction, and any dangers connected with the work were known to him and were created by him. They further pleaded and relied upon assumption of risk by, and contributory negligence upon the part of, decedent.

On this appeal it is insisted that appellee failed to establish his case, and that appellant's motion for a directed verdict, at the conclusion of appellee's evidence, should have been sustained.

There is no evidence whatever that appellant McCandless, or any other person, ordered or directed the decedent to stand on the line deck of the fuel flat at or before the time of his injury, or to take or assume a station at any particular point; nor that it was necessary or even proper for him to be at that particular place at the time of his injury, nor that the nature or character of the work required him to be at that particular place, nor is there any proof that the capstan of the boat, or the timberhead of the barge, or the line put out to draw the tow back to the river bank, or any other instrument with or by which the tow was being brought into the bank, was defective or unsafe in any particular, and no claim is made here that any of them were, or either of them was, defective or in an unsafe condition. The place at which decedent was standing at the time of his injury was unsafe only in that it was in such close proximity to the angle of the line that, when the line slipped off the timberhead, he was within its "bite."

It is undisputably shown by the evidence that, at the time of tying up the boat, decedent was acting as mate; that, in the absence of the captain, it is the duty of the mate to superintend and direct the tying up of the boat and tow; that the first three lines with which the boat and tow were tied up were run out under the direction of appellant McCandless, who then went to his supper, and was not on deck at the time the head of the tow began drifting out into the stream; that decedent directed that the fourth line be run from the capstan, over the tim-

berhead, and then to a tree on the bank and there tied; that he then placed himself on the line deck of the fuel flat opposite the angle in the line, and, when the revolutions of the capstan began to tighten the line, it slipped over the timberhead, and in its rebound struck him; that, had he placed himself a few feet further away in any direction, except closer to the angle, he would have been in no danger from the line when it slipped off the timberhead; that decedent was an old and experienced seaman; had been engaged in the same sort of work for more than 20 years; that he had frequently acted as mate on boats similar to the boat in question, and was thoroughly familiar with the work of tying up boats and barges in this manner. There is some dispute in the evidence as to whether appellant McCandless or decedent gave the order to start the capstan, but, under our view of the case, this is immaterial; for it is shown, and not disputed, that, after the capstan was started, Captain McCandless came out on the hurricane deck of the boat, observed the tightening of the line, the danger of it slipping over the timberhead, and called to decedent to get out of the way. At the time he did this, Redding, the regular mate of the boat, was going on duty, and was crossing the barges going toward decedent. Redding heard appellant McCandless' warning and got out of the way, but decedent either did not hear the warning or refused to observe it. The proof shows that he was hard of hearing, and may not have heard the warning, but it is also shown by a witness that he himself called decedent's attention to the danger of his position and that, if the line should slip over the timberhead, it would strike him, and that decedent replied that he did not think it would.

It is clear, therefore, that the accident and consequent injury to decedent resulted solely from the line slipping over and off the timberland and striking him. The line had been placed there at his direction, in his presence, and he had placed himself so close to it that, if it did slip off, he was within the distance of its rebound and was warned of his danger and advised to get further away. He was, in this work and at this time, vice principal; by his order and under his direction was created the condition which brought about his injury, and under no rule of law can appellant be held liable for his death therefrom.

Negligence is the failure to observe some duty that the employer owes to the employee, and, unless there was

some duty upon the part of appellants to provide against the accident here and to prevent its happening, the charge of negligence and violation of duty cannot be maintained. We have frequently held that, where the servant, and especially if he is the vice principal on the spot, himself creates the danger and renders the place unsafe, and with that knowledge continues to work at it, and sustains injuries, then and in such case he himself is the sole producer of his injuries, and which cannot in any legal sense be charged to the master without some proximate causal dereliction on his part. Horse Creek Mining Co. v. Frazier's Adm'x, 224 Ky. 211, 5 S. W. (2d) 1064; Lucas Land & Lumber Co. v. Cook's Adm'r, 166 Ky. 584, 179 S. W. 582, and cases therein cited. The evidence fails to disclose any proximate causal dereliction upon the part of appellant.

But appellee insists that the boat was unseaworthy, in that it had only one licensed mate; that decedent was employed in violation of the general rules and regulations of the department of commerce, in that he was not a licenses mate, and, for those violations of the law, appellant is deprived (1) of the right to rely upon contributory negligence or assumption of risk; and (2) because he was not a licensed mate, appellant owed him the duty of directing him in the performance of his work and warning him of the dangers incident to it.

Section 8225, U. S. Comp. St. 1918 (35 Stat. 55, 46 USCA, sec. 222), provides: "Any vessel of the United States subject to the provisions of this title or to the inspection laws of the United States shall not be navigated unless she shall have in her service and on board such complement of licensed officers and crew including certified life-boatmen, separately stated, as may, in the judgment of the local inspectors who inspect the vessel, be necessary for her safe navigation. The local inspectors shall make in the certificate of inspection of the vessel an entry of such complement of officers and crew including certified life-boatmen, separately stated, which may be changed from time to time by endorsement on such certificate by local inspectors by reason of change of conditions or employment." It is conceded that under that section of the statute, the local inspectors, on their certificate of inspection of the Charles F. Richardson, required for use in her service only one licensed mate when the boat was in navigation not more than 13 hours out of each 24 hours.

Other than the testimony that the boat, on the occasion herein referred to tied up for the night between 5 and 6 o'clock in the afternoon, there is no proof in the record as to how many hours out of each 24 hours she was in navigation. But since, under her inspection certificate and the complement of officers authorized by it, the boat could be legally navigated only 13 hours out of 24 hours, the presumption would be indulged that she was navigated only for the time and with the complement of officers authorized. And if the boat be attacked as unseaworthy on the ground that she was navigated more than 13 hours out of 24, and therefore with an insufficient complement of officers, it was incumbent upon appellee to produce the proof upon that point. In the absence of such proof, it cannot be said that the boat was unseaworthy and navigated in violation of the statute, so as to deprive appellant of the defenses relied on by it. For this reason, the authorities cited by appellee are not in point.

The proof further shows that under the aforesaid rules and regulations of the Department of Commerce for the operation of boats on inland waters, the mate is required to be on duty six hours at a time and then to be off duty six hours at a time. It also shows that decedent had every qualification of a licensed mate, except for his defective hearing, and the fact that he was not licensed. But it was shown that he was used as, and performed the duties of, mate at such time as the licensed mate was off duty.

Under the Federal Employers' Liability Act (45 USCA secs. 51-59), where an injury to an employee is attributable to the negligence of the employer, the defense of the contributory negligence is not available, except in diminution of damages; and, where the injury results from the failure of the employer to comply with an act of Congress for the promotion of the safety of employees, such defense is not available for any purpose. But assumtion of risk is allowable, except when the employer has violated such a statute. L. & N. R. Co. v. Reverman's Adm'x, 228 Ky. 500, 15 S. W. (2d) 300. The rule introduced in evidence, and relied on, was not violated, as appellant's boat had the required licensed mate; and there has been called to our attention no rule of the Department of Commerce for the operation of steamboats, or act of Congress for the promotion of the safety of employes, which would prevent the employment of

Parker in the performance of the licensed mate's duties at such times as the latter would be off duty. It follows, therefore, that appellants were not deprived of the right to plead and rely upon decedent's contributory negligence and assumption of risk.

The reason for the rule of law requiring the master to instruct his servant touching his duties, the nature of the work to which he is assigned, and to warn him of the dangers attending it, is to impart to the servant the knowledge attributable to the master and which it is presumed the servant does not have. But, if the servant, in fact, has all the information which the master could give him, to instruct him and warn him would be needless, and, in such state of case, the failure could not be the proximate, or any, cause of the injury. Jones v. L. & N. R. R. Co., 95 Ky. 576, 26 S. W. 590, 16 Ky. Law Rep. 132. As has already been stated, decedent was a man of more than 20 years' experience in operating, landing, and tying up steamboats and tows, and was as familiar with the work as was appellant McCandless; whatever dangers attended that work were as well known to him as to Captain McCandless. Hence there was no negligence in the failure to give him instructions as to the nature of, and manner of doing, the work or the dangers attending it. Pruitt v. N. & W. Ry. Co., 188 Ky. 204, 221 S. W. 552, and cases cited.

However, a careful and painstaking examination and consideration of this record has convinced us that there is no proof of any negligence on the part of appellants which caused or brought about the injuries from which the decedent lost his life, but, on the contrary, it is shown that he, himself, created the condition and set in motion the instrument, which caused, and by his own negligence brought about, the injuries which resulted in his death.

Under the undisputed facts of the case, appellants were entitled to a peremptory instruction (C., N. O. & T. P. Ry. Co. v. Hansford, 173 Ky. 126, 190 S. W. 690; Haley's Adm'r v. C. & O. R. R. Co., 157 Ky. 208, 162 S. W. 827; Collett's Guardian v. Standard Oil Co., 186 Ky. 142, 216 S. W. 356; Fluenwider v. Brawner, 224 Ky. 274, 6 S. W. (2d) 264); and if, upon another trial the evidence be the same as is now before us, the court will give such an instruction.

Wherefore the judgment is reversed for proceedings consistent with this opinion.