CASE 37.—ACTION BY JOHN WICKHAM'S ADMINISTRATOR
    AGAINST THE LOUISVILLE & NASHVILLE RAIL-
    ROAD COMPANY FOR CAUSING THE DEATH OF
    PLAINTIFF'S INTESTATE.—November 10, 1909.

## Wickham's Adm'r v. Louisville & Nashville R R. Company

Appeal from Spencer Circuit Court.

CHAS. C. MARSHALL, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Affirmed.

1.  Master and Servant—Injuries to Servant—Contriburory Neg-
    ligence.—Where a watchman employed to keep trespassers
    on a railroad track from being injured by trains suddenly
    stepped without looking from a place of safety before an ap-
    proaching train, which he knew was due, he was negligent
    as a matter of law barring a recovery for his death.
2.  Master and Servant—Injuries to Servant—Care Required of
    Master.—A railroad does not owe to its watchman employed
    to keep trespassers on the track from being injured by trains
    the duty of regulating the speed of its trains, and it is not
    liable for the death of the watchman struck by a train mere-
    ly because it operated the train at a negligent speed, be-
    cause of the fact that the public customarily used the track
    at that point, which was within an incorporated town.

REASOR & CRUME and EDWARDS, OGDEN & PEAK and
PEAK & HOLLAND for appellant.

We assert that we were entitled to have the jury pass upon
the question as to whether thirty-five miles an hour under the
circumstances proven in the case at bar was a negligent rate of
speed which was the proximate cause of Wickham's death.

The same rule, that is, that it is the duty of the railroad
to moderate the speed of its trains in such localities, has been
announced by this court in a number of cases, of which are the
following: L. & N. R. R. Co. v. Schuster, 10 Ky. Law Rep., 65;

Wickham's Admr. v. Louisville & Nashville R. R. Co.

Connelly's Admr. v. Cin., etc., R. R., 89 Ky. 402; Gunn v. Felton's Receiver, 22nd Ky. Law Rep., 268; 108 Ky., 561; C. & O. R. R. Co. v. Perkins, 20th Law Rep., 608; L. & N. R. R. Co. v. McComb, 21st Law Rep., 1233; C. & O. R. R. Co. v. Keelin's Adm'r, 22nd Ky. Law Rep., 1942.

LUTHER C. WILLIS and BENJAMIN D. WARFIELD for appellee.

### POINTS DISCUSSED AND AUTHORITIES CITED.

In this action to recover damages for the killing of a yard watchman by being struck by a fast train, while said watchman was on duty, and when he knew the train was coming, the trial court properly instructed the jury to find for defendant. No negligence was proven against it. But even if it could be said that the train was run at a negligent rate of speed, that negligence was not the proximate cause of the accident. Decedent was at a safe place until the engine of the train had almost overtaken him, when he suddenly stepped closer to the track the train was on, and was struck and killed before there was time to do anything to avert the accident after he assumed a perilous position. Furthermore, even if the speed of the train was negligence, decedent's stepping on the track immediately in front of the train was also negligence, and if the negligence of both parties concurred to produce the accident, plaintiff cannot recover, as the doctrine of comparative negligence does not prevail in Kentucky, but the doctrine is that contributory negligence bars a recovery. L. & N. R. Co. v. Redmon's Adm'rx., 122 Ky. 385; I. C. R. Co. v. Willis' Adm'rx., 123 Ky. 636; I. C. R. Co. v. Dick, 91 Ky. 434; Coleman's Adm'r v. P. C. C. & St. L. R. Co., 23 R. 401; C. N. O. & T. P. R. Co. v. Harrod's Adm'r, 115 S. W. 699; Johnson's Adm'r v. L. & N. R. Co., 91 Ky. 651; Givens, by etc., v. L. & N. R. Co., 24 R. 1796; I. C. R. Co. v. Hocker, 21 R. 1398; Ford's Adm'r v. Paducah City Ry., 124 Ky. 488; L. & N. R. Co. v. Tower's Adm'r, 115 S. W. 719; Hummer's Extrx. v. L. & N. R. Co., 128 Ky. 486; L. & N. R. Co. v. Mounce's Adm'r, 28 R. on . 937.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Appellant, J. W. Crume, as administrator of John Wickham, instituted this action against appellee, Louisville & Nashville Railroad Company, to recover damages for the destruction of the life of John Wick-

ham.  At the conclusion of all the testimony the court awarded appellee a peremptory instruction.

The deceased, John Wickham, was killed on April 29, 1908.  At the time of his death he was 53 years of age.  He was then in the employ of appellee in its South Louisville yards as day watchman, and had been working in that capacity for about six months. He was earning $40 per month.  His duties as watchman were to protect the property of appellant in its yard at the point where he was stationed, and to see that school children and other trespassers were kept off the track and not injured by passing trains.  The deceased was killed in Highland Park, an incorporated town of about 2,000 inhabitants.  Highland Park is situated about one-half mile south of the southern limits of the city of Louisville.  Its principal thoroughfare is Ottawa street, which crosses the tracks of appellee about 150 feet north of the station at Highland Park, about 680 feet south of the "FX" tower, and about 700 feet south of the point where decedent was killed.  At the "FX" tower, the point near which decedent lost his life, appellee had three tracks, namely: North Main, South Main, and "Drill track."  Just north of the "FX" tower the tracks became numerous and constitute appellee's yards; there being 12 tracks in all.  There is a street on each side of the yards, one on the east and one on the west, running north from Ottawa street.  They run for a short distance only.  At the place where decedent was killed, appellee's right of way was about 80 feet wide.  There was proof tending to show that a number of persons passed across the track at this point.  Appellant was struck by train No. 4, which is a fast passenger train running between Nashville and Cincinnati.  It was due at the

"FX" tower just north of Highland Park at 8:43 a. m.   It was on time on the morning of April 29, 1908.   It was then running between 25 and 30 miles an hour.   Its speed was a little less than its usual rate.

Just prior to the accident the decedent was in the tower house talking to one Harry Barker.   In the presence of decedent, and at a time when decedent was close enough to hear, Mr. Daniels, the tower operator, told Barker that No. 4 was approaching. Barker and decedent then left the tower house. Train No. 4 did not stop at the tower house.  When it arrived it gave the usual signals of its approach by blowing the whistle and continually ringing the bell. The decedent went to a point between North Main track, that on which No. 4 was running, and track No. 1.   At that time he was in a safe place.   These tracks were about 10 feet apart.   He then walked a distance of about 25 feet between these two tracks until he got where the switch target was located.   As decedent approached the switch target, the yard engine was coming toward the switch target with a number of freight cars attached, and was making the usual and customary noises incident to a moving freight train.   When decedent reached the switch target, he turned to pass between it and the North Main track.   This brought him in dangerous proximity to train No. 4, which was then passing.  Up to that time he had been in a safe place.   When he attempted to step between the switch target and the North Main track, train No. 4, was right on him, and he was struck by the engine and killed.

It is not charged that there was any negligence in failing to give the usual, customary, and timely warning of the approach of the train.   It is not alleged

that those in charge of the train saw, or by the exercise of ordinary care could have seen, decedent in time to avoid injuring him. The only negligence relied upon is the speed of the train. To sustain this contention it is argued that it was shown that there was a customary use by the public of appellee's tracks at that point, and, as the accident happened in an incorporated town, appellee should have run its train with reference to the presence of such persons, and that it was negligence on its part to pass that point at a speed of 25 or 30 miles an hour. In considering this question, it must be remembered that there was some evidence tending to show that decedent had actual notice of the approaching train. Whether this be true or not, it is certainly true that decedent was employed to keep trespassers on the tracks from being injured. He had been employed as watchman for six months. It was his duty to know the time of the arrival and departure of trains at that point. What, then, was the duty of appellee towards decedent?

In the case of Conniff v. L. H. & St. L. Ry. Co., 124 Ky. 736, 99 S. W. 1154, 30 Ky. Law Rep. 982, where damages were sought for the death of a flagman who was stationed by the railroad company at a street crossing in Louisville to warn persons of the approach of trains, this court said: "It was as much the duty of Conniff to keep a lookout for trains approaching the crossing, and give warning to travelers, when he was arranging to switch targets, as it was when he had finished his task and was engaged in no other way than as flagman. Resting the case upon this ground, appellee did not owe Conniff any lookout duty, and was under no obligation to give him warning of the approach of its trains; in fact, owed

him no duty, until, as the court said in the instruction, he was discovered to be in peril.

In the case of Cincinnati, N. O. & T. P. Ry. Co. v. Harrod's Adm'r (Ky.) 115 S. W. 699, the distinction between the duty owing by railroad companies to a licensee and to those whose duty it is to know of the time of the arrival of trains is clearly pointed out. There the decedent was a brakeman in the employ of the Southern Railway Company. He was at work in the railroad company's yards at Georgetown, Ky., and was engaged with others in shifting cars. This court, in discussing the question of excessive speed said: "If Harrod had been a section workman in the yards at Georgetown, his case would not have been less than it is. Section men work in railroad yards, as well as in the country, at all times, and may reasonably be expected there at any time. They must be aware of the time of the running of the trains over the track on which they are at work. Even though those in charge of a fast train knew they were working at that point, or might reasonably be expected to be working there, they also knew it was their duty to maintain a clear track for that train and to themselves keep out of its way, as they well could. Would the speed of the train, even though negligence to the passengers or licensees, have been negligence as to them? We think not, and it would make no difference whether they were in the yards at Georgetown, at Kincaid, or in the country where there was no station, for it must always be borne in mind that negligence toward a person is the antithesis of a duty owing to that person.

But the facts of this case carry us one step further. Decedent actually knew that train No. 4, a fast through passenger train, was due to pass that

point at 6:50. He obtained the knowledge for the very purpose of keeping out of its way. When it came along at the very moment that it was due to come, it were as if he had at that moment notice of the fact. Why do trains whistle and ring their bells? Obviously to notify people, whom they owe a duty to, of their approach. If, then, the person to be notified already knows the fact, why again notify him? L. & N. R. R. Co. v. Taaffe's Adm'r, 106 Ky. 535, 50 S. W. 850, 21 Ky. Law Rep. 64; Helm v. L. & N. R. R. Co., 33 S. W. 396, 17 Ky. Law Rep. 1004; Craddock v. L. & N. R. R. Co., 16 S. W. 125, 13 Ky. Law Rep. 18. And why are trains required by common law to slacken their speed when passing through populous settlements? Because it is far more probable that one or more persons from among so great a number may be, and probably will be, rightfully using the tracks of the railroad at that point at that moment unaware of the train's approach, and, if the too high rate is maintained, they will be run over and killed or injured before they could get out of the way, even after learning that the train was coming. But those who know that the fast train is due and coming in cannot rely upon its duty towards others ignorant of the fact, so as to charge its operatives with negligence in running it at high rate of speed, for with their knowledge, by keeping off the track, the speed of the train would be harmless to them.

But the facts here carry us still another step. Decedent unnecessarily went from a place of safety to one of great hazard to serve his own convenience alone, and thereby put himself in a position where no amount of care in operating train No. 4 would have saved him. They could not see him until he sud-

denly stepped out on the track immediately in front of their engine. Whether running 20 or 50 miles an hour then, the train could not have been stopped in time to avoid striking him. Between the tracks was a safe place in which to do his work. On the west side was safer, though not quite so convenient. To step into the middle of the main track, at the moment a fast, heavy train was due, and which he knew was due, without looking, is such an act of negligence that its quality is not debatable. Nor can it be ignored in law. Being established without question, its legal effect is a pure question of law.

The rule laid down in I. C. R. R. Co. v. Murphy's Adm'r, 123 Ky. 787, 97 S. W. 729, 30 Ky. Law Rep. 93, 11 L. R. A. (N. S.) 352, is not applicable to this case. There Murphy was one of the public, and a licensee. In this case the decedent was an employe whose duty it was, not only to keep others out of the way of appraching trains, but himself likewise. Furthermore, Wickham, who had been in a place of safety, suddenly stepped before the approaching train, which he knew was due, and without looking. As said in the case of Cincinnati, N.O. & T.P. Ry. Co. v. Harrod's Adm'r, supra, this was such an act of negligence that its quality is not debatable.

In view of the foregoing authorities, we conclude that the speed of the train at the time of the accident was not negligence as to the decedent. It would be a strange rule, indeed, that would require a railroad company to regulate the speed of its trains with reference to the presence of a watchman, whose duty it was to know when the train would arrive and keep others and himself from being injured by it. As no other negligence is relied upon, we conclude that the court properly directed a finding in favor of appellee.

Judgment affirmed.