## Louisville & Nashville Railroad Company v. Fentress' Administrator.

(Decided October 28, 1915.)

### Appeal from Muhlenberg Circuit Court.

1. Negligence—Cause of Injury.—One who knows that a train is approaching and, either because of his recklessness or by reason of mistaken judgment, places himself on the track in front of it and is thereby injured, cannot recover, because, however negligent the company may have been, his own conduct is the proximate cause of the accident.

2. Negligence—Proximate Cause.—One who knows that a train is approaching from behind and so knowing gets on one track, assuming that the train is coming on another track, and is injured, cannot recover. His own error in judgment or mistake is the proximate cause of the injury.

BENJAMIN D. WARFIELD, TAYLOR & EAVES and WILBUR F. BROWDER for appellant.

VIRGIL Y. MOORE, GORDON & GORDON & COX and THOMAS J. SPARKS for appellee.

OPINION OF THE COURT BY JUDGE TURNER.—Reversing.

On Sunday, November 9th, 1913, Bruce M. Fentress and Duncan Morgan, aged respectively 18 and 17, went to Cleaton, a mining town in Muhlenberg County on appellant's railway line, to call upon two young ladies, Misses

Jackson. Finding that the young ladies were out of town but would return on the afternoon train they remained there and met them at that train. The young men themselves expected to leave the town on another train which left shortly after the train bringing the young ladies, came.

After having first made arrangements with a friend to purchase their tickets for them so that they could remain as long as possible with the young ladies and still catch their train, they proceeded with them down the railroad track about two hundred and fifty or three hundred yards in the direction of their home. At this place was a bridge or crossing where they had a view of the railroad track all the way back to the station and about two hundred and fifty or three hundred yards in the other direction from which the train they expected to board was coming. They stayed at the bridge or crossing and talked to the young ladies for about five minutes, when their train appeared around the curve about two hundred and fifty or three hundred yards away; they hastily told the young ladies goodbye and started running down the track towards the station, the train coming behind them going in the same direction; it was about 5:40 p. m. and dark. Morgan was about ten feet in front of Fentress; at a point about half way between the bridge and the station there were four tracks, two of which run under a coal tipple, another known as the main track, and a passing track; the main track was the most eastern and the passing track was next to it, and between them was a space of a few feet. The headlight of the engine was shining brightly, and when they were near the coal tipple Fentress, thinking that Morgan was on the passing track and that the train behind them was coming on that track, hollered to him that he was on the wrong track; Morgan at the time was not in fact on the passing track but was in the space between the two tracks, but when notified by Fentress that he was on the wrong track, he immediately observed that Fentress himself was on the track upon which the train was coming and which was then within ten feet of him, and so notified him. Fentress then for the first time observed that he was on the track upon which the train was coming and made a quick and well-nigh successful effort to jump off the track, but the engine struck his leg, threw him against a switch signal and killed him.

This is an action by the personal representative of Fentress against the railroad company for damages; on the trial in the lower court the plaintiff recovered a judgment and verdict for $2,500 and the railroad company appeals.

The only ground of reversal is that the company was entitled to a peremptory instruction, and that is the only question necessary to be determined.

Morgan, Fentress' companion at the time, was the only eye witness to the accident, and tells of it in the following way:

"We ran right down there between those tracks and right a little of this side of the tipple here, about there, he got between those tracks, he got on the main track; that is where I judge he got on. Before I noticed it he was down here, along here somewhere, and he hollered to me to look out that I was on the wrong track. I hollered—when I looked around, I guess the train was ten feet away from him—I had time to holler but he didn't have time to get off, he was almost off along there; the train hit him on his left leg. I found him laying right there.

"Q. He was along down here about this green cross somewhere alongside the tipple? A. Yes. Q. And said to you that you were on the wrong track? A. Yes, sir. Q. Immediately you turned and looked and saw he was on the wrong track and you told him so? A. Yes, sir. Q. And before he could get out of the way the train struck his left leg here at this point? A. Yes, sir. Q. And did you go to him immediately after the train passed? A. Yes, sir. Q. Where did you find him? A. Right there. Q. Did he hear your warning that he was on the wrong track? A. I believe he did. Q. How far were you from him at the time? A. I was about—I hollered about twenty feet. Q. Did he attempt to heed the warning you gave him? A. Yes, sir. Q. He didn't have time to get out of the way? A. No, sir. Q. What did you see him do when you cried to him that he was on the wrong track where the train was approaching? A. He looked around and saw he was wrong and tried to get off. Q. Was he in the act of jumping off when it struck him? A. Yes, sir. Q. As you saw him, did the train strike him at any place except on the left leg? A. No, sir."

Again on his main examination he testifies as to the point where Fentress got on the main track as follows:

"Q. You think young Fentress passed on to the main track about the green cross? A. That is where I said he got on, right there. Q. What distance, Mr. Morgan, is it from the point where he got on the track to the point where he was struck? A. 140 feet."

Again, on cross-examination, he says:

"Q. When you saw the train coming and heard it coming what did you and Fentress do? A. Went down the track. Q. Who was ahead? A. I was. Q. What part of the track did you run down? A. Between the main track and the west side, on the west. Q. How far was the train away from you when you started to run down to Cleaton to get on the train? A. It was coming around the curve up there from Bevier. Q. About how far was that from where you were standing? Did you see that measured? A. No, sir. Q. It would be a mere guess to say how far it was? A. Yes, sir. Q. You don't know how far it was? A. No, sir. Q. Can you say approximately how far it was in your opinion? Was it as much as two hundred yards? A. Yes, sir; it is that much. Q. Three hundred yards? A. I think between two and three hundred yards. Q. Between two and three hundred yards? And you were two hundred yards from the station on that bridge? A. Yes, sir, what I guess. Q. That is your opinion? A. Yes, sir. Q. You saw the train between two and three hundred yards coming towards you while you were standing on the bridge and then it was about two or three hundred yards from the station where you were to get on the train? A. Yes, sir. Q. Well, you wanted to beat the train to the station, didn't you? A. Yes, sir. Q. When you left the little bridge where you left these young girls, did you both start together or were you ahead when you started? Or do you remember that? A. I don't remember. Q. Did you outrun him? A. Yes, sir, I was in front. Q. How far in front when he told you you were on the wrong track? A. About ten feet. Q. About ten feet? And you saw that car, did you not, about along here? Where did he tell you you were on the wrong track? Were you on this track at all? A. No, sir. Q. You were between the tracks, were you not? A. Yes, sir. Q. You were on no track, were you? A. I was not. Q. Where was he when he hollered and said you were on the wrong track—having this point in view and this up here? A. It was about there. Q. About there? A. Yes, sir. Q. Mark that with a piece of chalk. (Point was marked on the diagram with a green cipher.) Q. You

were right here about ten feet ahead of him? A. Yes, sir. Q. And he was there when he first said 'Look out, Morgan, you are on the wrong track,' didn't he? A. Yes, sir. Q. What did you say to him? A. I said you are wrong. Q. Now, then, is it not true that he immediately, upon you saying that, tried to get off that main track? A. Yes, sir. Q. And was struck by the engine at once? Isn't that a fact? A. Yes, sir. Q. Do you know how far he was from the engine when he turned and said you were on the wrong track? A. I would say about ten feet."

Morgan, as stated, was the only eye witness to the accident, and this is all the testimony showing how it happened. The engineer, however, testified that he was in his cab maintaining an outlook and that he did not see the decedent at all, and did not know of his injury until he had reached a station several miles north of Cleaton where the news had come over the wire. He further explains that from his position in the cab if one had come on the track in front of his train within thirty-five feet of the engine, by reason of certain obstructions, he could not have seen him.

It will be seen from this evidence that these two young men, with full knowledge that the train was approaching, deliberately started out on or alongside the railroad track to beat it to the station so that they might board it, knowing when they started that the train was only about twice as far from the station as they were, and presumably knowing that it was running much faster than twice as fast as they could go and would overtake them at some point before they reached the station. In this situation they deliberately ran alongside of and on the railroad tracks, and while the evidence is somewhat confusing as to when Fentress got on the main track it was pure recklessness and inexcusable negligence for him, under these conditions, to have gotten on it at any point.

It is perfectly clear, however, from the conversation between the two young men that the real cause of the accident was that Fentress was on the main track and thought the train was coming up behind him on the passing track, and never discovered his mistake until the engine was in ten feet of him, when it was too late for him to save himself. So that the case resolves itself into the question whether he, being in full possession of the fact that the train was approaching from the rear, can recover from the railroad company because he was mistaken

about which track it was coming on. That he was mistaken is too plain for argument, for he notified Morgan that he was on the wrong track, thinking at the time that Morgan was on the passing track and evidently thought that he himself was on the track that the train was not on, and never discovered his mistake until too late to save himself.

In the first place it was sheer recklessness for him, with knowledge that the train was approaching, to be on either track; and, in the next place, being himself upon one track and assuming that the train would run on the other, was his mistake and not that of the company.

It is not a pertinent inquiry in this case whether the signals were given or not; Fentress knew of the approach of the train and no signals could have warned him of anything he did not know. Nor is it important whether he was a trespasser at the time or a licensee, or whether the train was running at an excessive rate of speed; the whole evidence shows that he, with full knowledge that the train was coming, negligently ran along and upon the track ahead of it, and that negligence coupled with his mistaken opinion that the train was running on the other track was the proximate cause of his death.

The case of Louisville & Nashville R. R. Co. v. Trower's Admr., 131 Ky., 589, was where a mail carrier who was under the duty of putting mail on the local passenger train was killed. A special train was running on the time of the local passenger and Trower heard the train coming presumably thinking it was the local, and knowing of the approach of the train he undertook to cross the track in front of it and was killed. His administrator recovered a judgment in the circuit court, and this court, in reversing that judgment, and directing a verdict for the defendant, said:

"He whose negligence is the proximate cause of the injury is the one at fault in law, and is the loser. Appellant's negligence in running its train too fast by the station was not the proximate cause of the intestate's death. His own negligence in going upon the track with knowledge of the defendant's negligence, or rashly or recklessly ignoring its negligence and 'taking chances,' was the proximate cause of his injury; for, but for it, appellant's negligence would have been harmless as to him. In all the cases cited where the fact was undisputed that the injured party knew of the train's approach, and heedless

of it, or miscalculating the results, went upon the tracks just in front of the train, a recovery was denied. From these authorities we gather the principle of law to be that it is such negligence for one to go upon the railroad track just in front of a rapidly approaching train, which he sees or knows to be coming in, that for his injuries inflicted by it he cannot recover from the railroad company, not because it was free from negligence, but because his own negligence was the immediate and nearest cause of his injury. We think the undisputed facts of this case bring it within that principle, and the peremptory instruction should have been granted.''

In that case the authorities were extensively reviewed, and the rule is deducible from them that whenever one knows that a train is approaching, and either because of his recklessness or by reason of his mistaken judgment, undertakes to cross in front of it and is killed or injured there can be no recovery, because, however negligent the company may have been, his own conduct is the proximate cause of the accident. There are many cases in this State where this general proposition has been laid down. Fentress knew of the danger, and so knowing got on the track assuming the train was coming from behind on another track. This error in judgment on his part furnishes no ground of recovery. Thompson on Negligence, 1 Sup., 27, Sec. 186.

There should have been a directed verdict for the defendant.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.