## Louisville & Nashville Railroad Company v. Perry's Administrator.

(Decided January 16, 1917.)

### Appeal from Knox Circuit Court.

1. **Evidence—When Sufficient to Take Case to Jury—Test of.**—If the evidence on the subject of the negligence of a defendant is of such a nature as that there might be reasonable difference of opin-

ion whether the defendant was guilty of negligence or not, or if the reasonable inference from the facts tends to indicate that he was guilty of negligence, the case should go to the jury.

2.  Railroads—Duty of Engineer When He Discovers Person on Track Does not Heed the Approach of the Engine.—When an engineer discovers that a person on the track in front of the engine, who has been notified of its approach by the ringing of the bell and sounding of the whistle, is not going to leave the track, he must exercise ordinary care with all the means at his command to stop the engine. And in the absence of direct or satisfactory circumstantial evidence contradicting the engineer, his testimony that he did use ordinary care with all the means at his command to stop his engine, would warrant the court in directing a verdict for the defendant.

3.  Railroads—Duty of Engineer to Person on Track Who Does Not Know of Approach of Engine.—The rule that an engineer must use ordinary care with the means he has at hand to avoid injury to a person on the track after he discovers his peril, implies such care as a capable engineer would exercise and the doing of such things as a capable engineer would do.

4.  Railroads—Duty to Avoid Injury to Person After His Peril Is Discovered—Sufficiency of Evidence.—Where an engineer discovered, when the engine was more than two hundred feet from a person walking on the track in front of it that the person did not know of the approach of the engine and was not going to leave the track, and the evidence showed that the engine could have been stopped within one hundred feet from the time the engineer first attempted to stop it, the railroad company was liable in damages for the death of the pedestrian.

5.  Railroads—Duty to Person on Track When Peril is Discovered.—When an engineer actually discovers that a person on the track in front of his engine is not going to leave the track and is not giving any attention to the approach of the engine, he is under the same measure of duty to save him if he can whether he be old or young, or have good hearing or bad, or be sick or crippled, or strong and healthy.

BLACK & OWENS and B. D. WARFIELD for appellant.

J. M. ROBSION and M. A. GRAY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Ebb Perry, while walking on the track of the L. & N. Railroad Company near Corbin, Kentucky, was struck by one of its engines and killed. In this suit by his administrator to recover damages for his death, there was a judgment in favor of the administrator for one thousand dollars, and a reversal of this judgment is asked on the sole ground that the court should have

directed the jury to return a verdict in favor of the de-, fendant.

It is conceded that Perry, at the time he was struck and killed, occupied the attitude of a licensee on the track, and that the company owed him the duty of warning, lookout and reasonable speed. But it is insisted in behalf of counsel for the company that the evidence showed conclusively that the engineer in charge of the engine that struck Perry exercised all the care demanded to prevent striking him, and this being so, the trial court should have taken the case from the jury.

It appears from the evidence that Perry was walking south on the ties, on the main track, on the outside of the rail, on what may be called the right-hand side of the track, or the engineer's side in the direction in which he was going. The engine that struck him was running without any cars attached to it, at a speed estimated by eye-witnesses of from fifteen to twenty miles an hour and by the engineer at from twelve to fifteen miles an hour, and was going to make a stop, or, at any rate, slow down to go into a switch, about a hundred feet south of where Perry was struck. Perry, who, as shown by the evidence, was quite deaf, was walking with his back to the approaching engine and the track for several hundred yards north of where Perry was struck was straight, there being nothing to obstruct Perry, as he was walking down the track, from the view of the engineer, who was situated in his cab on the same side of the track on which Perry was walking.

P. C. Jenkins, the postmaster at South Corbin at the time of the accident, was so situated on the right-hand side of and near to the track that he had a full and unobstructed view of the engineer in his cab as well as of the engine and Perry, until the engine got within a hundred feet or less of the place where it struck Perry. He testified that when the engine came about this close to Perry, Perry went into a cut that obstructed him from his view. Jenkins further testified that he had worked on railroads and operated engines and was acquainted with the duties of an engineer, the speed at which trains run, and the movements that an engineer would make in stopping an engine. He said that when the engineer commenced sounding the alarm whistle, the engine was three hundred feet or more from the place where Perry's body was found after he was killed. That his attention

was directed to the scene by the constant sounding of the whistle. That when the engine was between two hundred and two hundred and fifty feet, or at any rate over two hundred feet from the point where Perry was struck, he saw the engineer reverse his engine and put his hand on the air valve, and that the engine could have been stopped with safety to the persons on the engine within one hundred feet from the place where he saw the engineer reverse his engine, but that the engine ran over two hundred feet from the place where the engineer applied his emergency brake before it struck Perry.

There is other evidence to the effect that the engine ran about seventy feet beyond the point where Perry was struck.

Cooper, an experienced railroad engineer on this line of road, testified that the engine that struck Perry at the time and under the circumstances related, could have been stopped, in the exercise of ordinary care and with safety to the persons on the engine, in a hundred or possibly a little over a hundred feet from the place where the engineer first made an effort to stop it. He further said that an engineer has two means of stopping the engine in an emergency, one known as the engineer's brake valve, that operates the air brake, and the other the reverse lever, but that a quicker stop could be made by using either one of the methods than by using both of them. That it was against the rules of the company to apply the air valve and also reverse the engine at the same time, and besides that this method would cause the wheels to slide.

Hauck, who was in charge of the engine, said that he had an unobstructed view of Perry, and that when he first noticed him he was about two hundred and fifty or three hundred and fifty feet from where he was struck. That when he first saw him walking down the track in front of and with his back to the engine, he sounded the alarm whistle when he was about two hundred and fifty feet from him, at which time the engine was running from twelve to fifteen miles an hour. That he continued to sound the whistle until he got within about a hundred feet or more of Perry, when he discovered that he did not appear to have heard the approach of the train or to have taken any notice of the sounding of the alarm whistle. That when he dis-

covered that he was not heeding the signal, "he applied the brakes in emergency and reversed the engine; applied the air with one hand, reversed the engine with the other and continued to blow the whistle and done that as quick as possible." That there was no other means on the engine at that time that he could have used to stop it. He further said that he could stop the engine quicker by using both of these means, that is, by applying the air brake and reversing the engine, than he could by using one alone, and that there was nothing else that he could have done that he did not do to avert the accident.

On cross-examination he said that he was about a hundred and fifty feet from Perry when he first observed that he did not give any attention to the approach of the train or the alarm signal. That Perry was about three hundred and fifty feet in front of him when he began to blow the alarm whistle, and that he ran about a hundred feet before he undertook to apply the brakes and reverse the engine, and that the engine ran about two hundred feet or more after he applied the air brakes before it stopped. He further said that he was looking at Perry from the time that he first discovered him, and that he did not give· any indication that he knew of the coming engine, nor did he make any effort to get off the end of the ties and out of the way of the engine, which he could have done by taking one or two steps.

Ellis, the brakeman, who was on the pilot or cowcatcher of the engine, and of course had a plain view of Perry, said that the engine commenced to slow down when it was within one hundred and fifty or perhaps two hundred feet of Perry. This witness also said that Perry did not give any indication that he heard the engine approaching or the whistle sounding.

Under the well known rule of this court applicable to cases like this, that if the evidence on the subject of the negligence of the defendant is of such a nature as that there might be reasonable difference of opinion whether the defendant was guilty of negligence or not, or if the reasonable inference from the facts tends to indicate that it was guilty of negligence, the case should go to the jury, we are of the opinion that the trial court did not commit error in submitting this case to the jury. Considering the evidence of the engineer in connection with that of the other witnesses, we think there

was ample room for reasonable difference of opinion as to whether the engineer, in the exercise of ordinary care and with the means at his command, could have stopped the engine after he discovered that Perry did not hear the approach of the engine, or the sounding of the whistle, or the ringing of the bell. There is evidence upon this point tending to show that the engine could have been stopped in about a hundred feet after the engineer discovered that Perry was not going to leave the track and undertook to stop the engine, and there is also evidence tending to show that when the engineer made this discovery, and when he undertook to stop the engine, it was between two hundred and two hundred and fifty feet from Perry, or, at any rate, over two hundred feet.

It is true that the engineer testifies that as soon as he discovered that Perry was not going to leave the track, he used all the means at his command to stop the engine, and if there were no evidence on this subject except that of the engineer, it might well be said, in the absence of direct, or satisfactory circumstantial evidence contradicting that of the engineer, that his evidence would warrant the court in directing a verdict in favor of the defendant. But in this case we are not confined to circumstances tending to show that the engineer could have stopped the engine after he undertook to stop it before striking Perry, because Jenkins, who was qualified to speak on the subject, said he saw the engineer reverse his engine and put his hand on the air valve when the engine was between two hundred and two hundred and fifty feet, or, at any rate, over two hundred feet from the point where Perry was struck. Now, when the engineer discovered, while he was some two hundred feet or more from Perry, that he was unconscious of the approach of the engine, it was then his duty to at once use ordinary care with the means at his command, to stop the engine. That was his duty and his whole duty under the circumstances. And in the performance of that duty, as the evidence shows, he did not exercise ordinary care, for if he had, he could certainly have stopped his engine in less than two hundred feet.

Under the circumstances of this case, the evidence of the engineer that he did exercise all means at his command to stop the engine, is not to be taken as conclusive.

The man who was running the engine was not the regular engineer, but a fireman temporarily in charge of the engine, and it is fair to assume that he did not have sufficient experience or qualifications to use the means at his command in such a manner as a capable engineer would have done, because we are sure that he did not purposely mean to strike or kill Perry. When we say that an engineer must use ordinary care with the means he has at hand, this implies such care as a competent engineer would exercise and the doing of such things as a capable engineer would do. Some persons who undertake to and do run engines might exercise the utmost care they were capable of and do everything that in their opinion could be done, and yet they might not be able to stop an engine in near so short a distance as a competent engineer could.

If, however, Hauck should be treated as a competent engineer and as one who understood the duties and requirements of his position, there is sufficient evidence to show that he could have stopped the engine before striking Perry. We may put the case upon this single issue and confine the negligence to the failure of the engineer, after he actually discovered that Perry was not going to leave the track, to stop his engine in time to avert the accident.

In considering the case we have given no attention to the evidence as to the defective hearing of Perry or any other ailment with which he was afflicted. It is wholly immaterial, in disposing of the case from the point of view from which we have considered it, whether Perry's hearing was bad or good, or whether he was in good health or bad health, for when an engineer actually discovers that a person on the track in front of his engine is not going to leave the track and is not giving any attention to the approach of the engine, he is under precisely the same measure of duty to save him if he can by the exercise of ordinary care with the means at his command whether he be old or young, or have good hearing or bad, or good eyes or bad eyes, or be sick or crippled, or strong and healthy.

The judgment is affirmed.