## Chesapeake & O. Ry. Co. et al. v. Prater's Adm'x.

(Decided Oct. 31, 1933.)

BROWNING & DAVIS, and KIRK & WELLS for appellants.

VINSON & MILLER, C. F. KIRK and J. L. HARRINGTON for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

About 10:30 o'clock on the night of August 30, 1930, John Prater was run over and killed by an engine of the appellant railway company. His administratrix brought this suit in the Johnson circuit court against the railway company and Jim Ruth, an employee of the

company, to recover for his death. The trial resulted in a verdict and judgment in the sum of $2,000 for plaintiff, from which this appeal is prosecuted. The facts are in substance these:

The engine was engaged in shifting cars from the main line onto side tracks. At the time of the accident, the engine was backing along a passing track in an easterly direction with the tender in front. There was an electric headlight on the end of the tender, and the appellant Ruth, who was a brakeman, was standing on the running board on the end of the tender. Ruth, the only eyewitness to the accident, in his testimony stated that he was riding upon the head end of the tender as the engine was being backed along the passing track. He testified that as he approached the switch connecting with the main line track he saw decedent throw up his hand and arm in front of his face; that decedent was lying on the track with his body alongside the rail, and that the engine was then within 30 or 35 feet of the decedent; that, as quickly as possible, he applied the air brakes by the use of the angle cock on the end of the tender, but that it was impossible to bring the train to a stop until it had run over decedent; that the engine at the time was running at a rate of 10 to 12 miles per hour; that the use of the angle cock, which consisted in raising up a lever and turning it around, was the quickest way possible to stop the engine, and there was nothing else he could have done to have stopped it sooner than it was stopped.

This evidence is uncontradicted, except by the witness Fred Preston, who testified that he had had several years' experience as railroad engineer and had operated engines similar to the one in question and had operated this particular engine. He stated that in his opinion, when the track was dry, an engine running at the rate of 12 miles per hour should have been stopped within 20 feet, and within 25 to 28 feet if the track was wet, but further stated that all engines could not be stopped in the same distance. Appellant Jim Ruth stated that it was a damp night and the track was wet. But he is contradicted in this by a number of other witnesses, who stated that it was a dry night.

At the close of plaintiff's testimony, appellants, defendants below, moved the court for a directed verdict in favor of the defendants, which motion the court over-

ruled, and the case was submitted to the jury without further testimony.

The single question presented for determination is whether or not there was any evidence of negligence on the part of appellants after the peril of decedent was discovered. It is a well-settled and oft-repeated rule that a person lying or sitting on a railroad track is a trespasser, and that the employees in charge of the train owe a trespasser no lookout duty until his peril is discovered. Louisville & N. R. R. Co. v. Smith's Adm'r, 186 Ky. 32, 216 S. W. 1063; Bevin's Adm'r v. C. & O. Ry. Co., 190 Ky. 501, 227 S. W. 794; Davis v. Crawford's Adm'x, 203 Ky. 71, 261 S. W. 835.

It is insisted for appellee that whether or not Ruth discovered Prater in time to have avoided killing him, by the exercise of ordinary care, was a question for the jury, and in support of this contention appellee cites and relies on a number of cases as authority in this case, to wit: Louisville & N. R. R. Co. v. Perry's Adm'r, 173 Ky. 213, 190. S. W. 1064, 1065; Becker v. L. & N. R. R. Co., 110 Ky. 474, 61 S. W. 997, 22 Ky. Law Rep. 1893, 53 L. R. A. 267, 96 Am. St. Rep. 459; Sowards, Adm'r, v. C. & O. Ry. Co., 208 Ky. 840, 272 S. W. 32, 33; Wimsatt's Adm'x v. L. & N. R. R. Co., 235 Ky. 405, 31 S. W. (2d) 729; Chesapeake & O. Ry. Co. v. McDonald, 239 Ky. 258, 39 S. W. (2d) 253; Louisville & N. R. R. Co. v. Bell, 108 S. W. 335, 32 Ky. Law Rep. 1312.

In L. & N. Ry. Co. v. Perry's Adm'r, supra, the proof conduced to show that Perry, who was killed, was walking with his back to the approaching engine, and the track was straight for several hundred yards between the engine and Perry, and there was nothing to obstruct the view of the engineer, who was situated in his cab on the same side of the track on which Perry was walking. It was testified by a witness who had worked on railroads and operated engines that the engineer commenced sounding the alarm whistle when the engine was 300 feet or more from the place where Perry was struck, and that, when the engine was between 200 and 250 feet from the point where Perry was struck, he saw the engineer reverse his engine and put his hand on the air valve, and that the engine could have been stopped with safety to the person on the engine, within 100 feet from the place where he saw the engineer re-

verse the engine. The engine ran over 200 feet from the place where the engineer applied his emergency brake before it struck Perry. Other witnesses give like testimony. The court said:

"When the engineer discovered, while he was some 200 feet or more from Perry, that he was unconscious of the approach of the engine, it was then his duty to at once use ordinary care, with the means at his command, to stop the engine. * * * And in the performance of that duty, as the evidence shows, he did not exercise ordinary care, for if he had, he could certainly have stopped his engine in less than 200 feet. Under the circumstances of this case, the evidence of the engineer that he did exercise all means at his command to stop the engine, is not to be taken as conclusive."

In Sowards, Adm'r, v. C. & O. R. R. Co., supra, the fireman, who was located on the side of the engine in view of the person struck by the train, testified that he saw something near the railroad track when within about 400 or 500 feet from the object, lying down in the path near the ties, and when he got within 30 feet of the object he stuck his head out of the window and saw that it was a man lying down in the path with his face down, and the front of the train had passed him then. The engineer said that he noticed the fireman acting like he saw something, and at that time they were 400 or 500 feet from the point where the man was struck. But they stated that they did not sound the whistle or give other warning. Said the court:

"It could not be contended that, if while the train was yet 500 feet away those in charge of the engine discovered the peril of deceased, they did not owe him the duty of sounding warning blasts from the whistle to advise him of his peril."

We do not deem it necessary to lengthen this opinion by reciting the facts of the numerous cases above cited. It is sufficient to say that they all disclose a state of facts similar to those recited in the cases, supra; i. e., that the engineer or other person in charge of the train, while several hundred feet from the person injured, saw objects or had other warning that a person or other object was on the track or in close proximity thereto; or that the trainmen were facing the direction of the

objects without any obstructions or reasons to prevent them from seeing the person while considerable distance from them. In this line of cases, where the circumstances strongly indicate that the engineer or other persons in charge of the train saw the person who was injured in time to avoid the injury, the evidence of those in charge of the train—that they did not see the person—will not be taken as conclusive, and the question should be submitted to the jury for its determination under all the circumstances as to whether or not the peril of the person injured was discovered in time to have prevented the injury.

In the case at bar there is no evidence either positive or circumstantial tending to show that Ruth, the brakeman on the tender, saw the decedent or any object; nor were there other circumstances tending to show that he did see decedent in time to have avoided running over him. His testimony that he was within 30 to 35 feet of decedent before he saw or discovered anything is uncontradicted, and as to whether or not he used all the means at his command to stop the train before it ran over decedent, and that the means he used as detailed by him were the proper ones to use in the circumstances, also is uncontradicted except by the opinion evidence of Fred Preston. In the case of Kentucky Traction & Terminal Co. v. Brackett, 210 Ky. 756, 276 S. W. 828, 829, reciting from the opinion Kentucky Traction & Terminal v. Roschi's Adm'r, 186 Ky. 371, 216 S. W. 579, it is said:

"The expert evidence is insufficient to contradict the certainly established physical fact that the car would not stop. * * *"

See, also, Louisville, H. & St. Louis Ry. Co. v. Jolly's Adm'x, 9 S. W. 977, 28 Ky. Law Rep. 989, and Cincinnati, New Orleans & Tex. Pac. Ry. Co. v. Webber, 178 Ky. 171, 198 S. W. 756.

In Cincinnati, etc., v. Webber, supra, page 176 of 178 Ky., 198 S. W. 756, 758, it is said:

"It must not be forgotten that the question here is not whether the brakes were in working order, or whether there was sufficient air to have instantly clamped the brakes to the wheels of the train, but it is whether the engineer immediately used all the means at his command to stop the train. We have

the testimony of the three witnesses in the cab to the effect that he did do that, and opposed to this are the opinions of plaintiff and his two expert witnesses that the train might have been stopped in time to have saved him after the brakes had been applied, which makes no allowance for the time necessary for the engineer to be informed and afterwards to act.''

It is further said in the same opinion (page 178 of 178 Ky., 198 S. W. 756, 759):

"The law does not look to bare possibilities. It requires no more of the human machine than may be reasonably expected of it under the circumstances. When all the evidence as to what was done by those who witnessed the transaction is to the effect that the engineer did everything in his power, and there is no evidence that there was anything omitted which he should have done, the bare opinion of experts that the train might have been stopped sooner than it was stopped cannot be said to contradict the witnesses as to the physical facts.''

This doctrine is referred to and approved in the case of Reynolds' Adm'r v. C. N. O. & T. P. Ry. Co., 148 Ky. 252, 146 S. W. 416; Louisville & N. Ry. Co. v. Behke's Adm'x, 164 Ky. 798, 176 S. W. 212; and Louisville & N. Ry. Co. v. Stokes' Adm'x, 166 Ky. 142, 179 S. W. 47, 48. In the Stokes' Case, supra, it is said:

"Unfortunately, too, men do not think and act in an emergency with the same dispatch with which others, in their calmer moments and who are free from the excitement of the occasion, think they should have acted. * * * It took further time for the engineer to think and act. It took further time for the train to stop after the engineer had acted. It seems to us, therefore, that the statements of the witnesses that a particular thing could have been done instantaneously, or another thing in a second or two, or that the train could have been stopped in from 8 to 10 feet, are mere speculations, based on what might have possibly happened if all the participants were apprised beforehand what would take place, and the verdict of the jury founded on such statements, is mere guesswork. Neither

courts nor juries are authorized to indulge in speculation or guesswork as to the cause of accidents. To authorize a recovery there must be some tangible evidence from which it may be fairly inferred that the defendant was guilty of negligence, and that such negligence was the proximate cause of the injury.''

We do not mean to hold that, if the physical facts and circumstances tend to show the probable falsity of the testimony of those in charge of the train, the latter should, notwithstanding, prevail. But in cases like the instant one, where the physical facts sustain the positive testimony, no case which we have been able to find permits the speculative statements of experts to overcome it.

A train moving at the rate of 12 miles per hour, as testified by appellant Ruth, is moving at the rate of 18 feet per second, and within two seconds would have moved 36 feet, which is more than a maximum distance fixed by the appellant Ruth as the distance decedent was from him when he first discovered him. There is some evidence to the effect that appellant Ruth had stated on another occasion that the distance might have been 50 feet. Assuming this to be true, within three seconds the train would have moved 54 feet. It is common knowledge that a second is a very small space of time. We are constrained to the view that two or three seconds is not an unreasonable time within which to stop a train moving at a rate of speed of 12 miles per hour.

In view of the facts presented by this record, viewed in the light of the authorities herein cited, it is our conclusion that there is no evidence tending to show any negligence on part of appellants and that the trial court erred in failing to sustain appellant's motion for a directed verdict.

The judgment is reversed and remanded, with directions to grant appellant a new trial and for proceedings consistent with this opinion.