## Louisville & N. R. Co. v. Shaw's Adm'x.

### Same v. Vittitow.

(Decided March 3, 1936.)

TRABUE, DOOLAN, HELM & HELM, ASHBY M. WARREN, and JAMES P. HELM, JR., for appellant.

WILLIAM A. EARL and W. W. DOWNING for intervening petitioners.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Albert Shaw and Chester Vittitow were engaged in the operation of a furniture truck for the United Furniture Company. On the afternoon of November 25, 1933, these two men were driving west on Dandridge street in the city of Louisville, and, while crossing the double tracks of appellant railroad company, which run

north and south, the truck on which they were riding was struck by an engine of appellant, resulting in the death of Shaw and seriously injuring Vittitow. Shaw was the driver of the truck, and Vittitow, his assistant, rode in the seat with him at his right.

Agnes Shaw was appointed administratrix of Albert Shaw's estate, and she and Vittitow brought their respective actions in the Jefferson circuit court to recover of defendant for the death of Shaw and the injuries of Vittitow. The two cases were consolidated and tried before the same jury, and resulted in a verdict of $1,000 each for the estate of decedent and for the injuries of Vittitow. From judgments entered on those verdicts, the railroad company appeals.

The only grounds urged in brief of appellant for reversal is that there was no evidence of negligence on the part of the appellant, and the court erred in failing to sustain its motion for a peremptory instruction.

The evidence is uncontradicted that, when Shaw and Vittitow were approaching the railroad tracks, they brought their truck to a stop within 20 or 25 feet of the northbound track. At that time the railroad engine which struck the truck was proceeding north on the east track and within about 70 or 75 feet of the place where the accident occurred. According to the undisputed evidence of the engineer, brakeman, and other employees of the appellant who were on the engine, they saw the truck stop at the point indicated above, and they thought the driver or those in charge of the truck saw the engine approaching the crossing and stopped for the purpose of waiting until the engine cleared the crossing before they proceeded farther, and the engine continued at the rate of about 15 miles per hour, and the bell was ringing continuously. But when the engine reached a point within about 40 feet of where the accident occurred, the truck started moving toward the track, and the engineer sounded the alarm whistle, applied the brakes in emergency, put the engine in reverse, and did all he possibly could to stop it and to avoid the collision. At the time the truck stopped before entering the track and at the time of the collision there was nothing between it and the railroad engine except a telegraph pole and an open wire fence. The plaintiff Vittitow testified that he or the deceased,

Shaw, could have seen the approaching engine had they looked to their left. At the same time a freight train was approaching the crossing from the opposite direction on the southbound track, and, according to the evidence of Vittitow and a number of other witnesses who were near about, Vittitow and Shaw were watching the freight train approaching from their right about 200 feet from the crossing; and Vittitow testified that after they brought their truck to a stop, he said to Shaw, "Alright, go ahead," and Shaw then started the truck, and he (Vittitow) did not look to the left, and never saw the engine until it struck the truck, and that if Shaw looked to the left, he did not see him.

Vittitow further testified, as follows:

"Q. * * * Now, then, when you started up from twenty feet away and ran your truck, about what speed had you made, or gotten into, before you got to the track? A. Slow.

"Q. How slow? A. You know how anybody's machine will do if you just start it.

"Q. Well, in what distance could he have stopped that truck? A. He could have stopped it if he had put his brakes on, I guess.

"Q. In five feet? A. Sure.

"Q. Then after you started up and you were running slowly, he could have stopped it within five feet, if at any time before you got to the railroad track, within that twenty feet, either you or the driver had looked to the left and you had seen this engine—he could have stopped his truck within five feet? A. Sure.

"Q. But neither one of you saw the engine? A. No, Sir."

It will be seen from Vittitow's evidence that they had ample time and opportunity to stop the truck before it reached the railroad track after the alarm whistle was blown, and their failure to do so is susceptible of but one conclusion, and that is they did not look to their left, and their whole attention was attracted to the freight train approaching at their right. There is no reason shown why they could not or did not hear the bell and whistle of the approaching engine, and per-

haps did hear it, but thought it was from the freight train approaching at their right, and, it being approximately 200 feet from the crossing, they attempted to cross the track before the freight train reached the crossing. This fact is established by Vittitow's own testimony, as well as the testimony of other witnesses.

Norman D. Gregory, a switchman on the engine at the time of the accident, testified that he saw the truck approach the track and come to a stop and then start moving toward the track, and at that time the men in the truck were looking north toward the freight train and immediately the engineer of the engine which struck the truck sounded the alarm whistle and threw on the brakes in emergency and, so far as he observed, did everything possible to stop the engine. It is shown that a train running at 15 miles per hour would move 22 feet per second and, the engine being only 40 or 45 feet from the crossing at the time the truck started moving toward the track, the engine would have reached that point in less than three seconds. It is shown by the testimony of a number of experienced railroad engineers that it would take four or five seconds to put on the brakes and the reverse lever in back motion, and then it would take about the same time for the engine to come to a stop.

The evidence satisfactorily shows that the engineer did all that could be done to bring the engine to a stop after the truck started moving toward the track. Furthermore, this conclusion is established by the physical facts, taking into consideration the speed of the train and the distance it had to move between the time the engineer discovered the peril of the plaintiffs and the time of the collision. Louisville. H. & St. L. Ry. Co. v. Jolly's Adm'x, 90 S. W. 977, 28 Ky. Law Rep. 989; Louisville & N. R. Co. v. Stokes' Adm'x, 166 Ky. 142, 179 S. W. 47; Chesapeake & O. R. Co. v. Prater's Adm'x, 251 Ky. 84, 64 S. W. (2d) 463.

It is insisted for appellees that appellant was negligent in failing to have its signal flashes at the intersection operating and in having no electric gong at the intersection as required by an ordinance of the city of Louisville enacted in 1884. It is shown that the signal flashes take the place of the gong, and the crossing was equipped with modern signal facilities. The evidence

is conflicting as to whether the signal flash was properly operating; but, in the circumstances, that was immaterial, since the purpose of the signal flashes and gongs are to give warning of approaching trains and plaintiffs knew a train was approaching. It has been repeatedly held by this court that if one knows a train is coming, there is no necessity for further warning. Cincinnati, N. O. & T. P. R. Co. v. Goode, 153 Ky. 247, 154 S. W. 941; Louisville & N. R. Co. v. Fentress' Adm'r, 166 Ky. 477, 179 S. W. 419; Louisville & N. R. Co. v. Taylor's Adm'r, 169 Ky. 435, 184 S. W. 371; Chesapeake & O. R. Co. v. Hunter's Adm'r, 170 Ky. 4, 185 S. W. 140; Mayer v. Louisville Railway Co., 192 Ky. 371, 233 S. W. 785, and cases cited. It is not denied that the deceased and Vittitow knew they were approaching the tracks and also knew that a train was approaching the crossing. They came to a stop before entering the crossing and saw the freight train approaching, but failed to observe the engine approaching from the left. When they brought the truck to a stop, the engineer and others in charge of the engine had the right to assume that they stopped the truck for the purpose of waiting for the engine to clear the crossing. The engine was in plain view of them, had they looked in that direction, and the bell ringing, and therefore the engineer had the right to assume that they saw the engine and heard the bell, and in these circumstances he was not required to attempt to stop the engine until he discovered the peril of the truck or its occupants, and that was when the truck started moving toward the track after it had come to a stop (Smith's Adm'r v. Cincinnati, N. O. & T. P. Ry. Co. et al., 146 Ky. 568, 142 S. W. 1047, 41 L. R. A. [N. S.] 193), and, as we have already said, he then did all he could to avoid the accident.

In appellees' brief emphasis is placed on the evidence of John Neidner, who testified that he was in his car about 100 feet back of the truck when the accident occurred; that the engine was coming around the curve without noise and was pretty close to the truck before he saw it, and he did not believe that the engineer tried to stop until he hit the truck, and he did not think he put on his brakes until he hit it. What the witness believed and thought from his observations at that distance away could not have any probative value as evi-

dence when measured to the positive and unequivocal evidence of the members of the engine crew and other witnesses who were near the scene. Appellees also make reference to the testimony of Louis Yurt, who testified that he saw the engine passing his workshop, which was located a short distance from the crossing, and that the engine was running 25 or 30 miles an hour. But he does not testify as to the speed of the engine when it was at the point where the engineer saw the truck approaching the tracks and stopped. Appellees' witness Neidner corroborated appellant's witness with relation to the speed of the engine. He saw the engine at the time it was approaching the crossing, and said it was running at about 15 or 20 miles per hour.

Appellees rely on the case of Cox's Adm'r v. Cincinnati, New Orleans & Texas Pacific Ry. Co. et al., 238 Ky. 312, 37 S. W. (2d) 859, 860, and other like cases. The facts in those cases are not in point with the facts in the present case. The facts in the Cox Case, supra, are indicated in the opinion as follows:

"These section houses cut off their view, looking north toward Sand Cut, of the train as it was backing from Sand Cut toward the crossing. No employee of the railroad company was on the back end of the train. The whistle was blown twice for the crossing about the time it came out of Sand Cut. The whistling post is 825 feet from the crossing. No other whistle was blown, and no bell was rung or other signal given to indicate the presence of the movement of the train or to indicate the intention of those in charge of the train to use the crossing. * * * There is no evidence in this case to the effect that decedents S. T. and Zelpha Cox knew of the approach of the train [and of its purpose to use the crossing] before they attempted to drive onto the track in time to have avoided the collision, or that when at a safe distance from the track they knew of its approach [and its purpose to use the crossing] and, with this knowledge, undertook to cross over the crossing ahead of it."

It will easily be seen that the facts in that case are entirely different from those in the present case. Certain other cases relied on for appellees deal with the question of contributory negligence of the injured or

deceased persons. In the present case we conclude that appellees, plaintiffs below, failed to show any negligence on the part of the defendant; hence it becomes unnecessary to discuss the question of contributory negligence or other questions raised.

Our conclusion is that the trial court should have sustained appellant's motion for a directed verdict in its favor.

Wherefore the judgment is reversed and remanded for proceedings consistent with this opinion.

The whole court sitting, except Stites, J.