## Louisville & N. R. Co. v. Browning's Adm'x.

March 14, 1939.

S. M. Ward, Judge.

J. MILLER WHITE, H. T. LIVELY, C. S. LANDRUM, CRAFT & STANFILL and ASHBY M. WARREN for appellant.

JESSE MORGAN, S. E. DUFF, PAUL GROSS, JOHN ASHER and J. T. BOWLING for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Appellant, Louisville & Nashville Railroad Company, is appealing from a judgment entered on a verdict of a jury awarding Nannie Browning, administratrix of the estate of her deceased husband, A. L. Browning, $10,000 damages for fatal injuries sustained by him. In urging reversal appellant insists that the court erred (1) in not instructing the jury peremptorily to find for it, (2) in admitting incompetent evidence, and (3) by instructing the jury erroneously.

A. L. Browning was struck by one of appellant's freight trains near the station of the unincorporated village of Viper, in Perry County, Kentucky. The train was going in a southward direction up the north fork of the Kentucky River at a rate of 30 to 35 miles an

hour. The station at Viper is located between the railway track and the river. According to the testimony of appellant's witness, one of its civil engineers, a nine degree and 59 minute curve in its track sets in 1114 feet north from the south side of its bridge over Mace Creek. This curve continues to a point 307 feet beyond the bridge and past the station where it compounds a four degree and 56 minute curve and then continues on for a distance of 456 feet.

Appellee's witness, Bob Adams, who saw the accident, testified as follows:

"Q. 16. You said you saw this accident, in which Mr. Browning was hurt. Tell the jury now just what you know about it in your own way? A. That morning he came along with the cattle and he called to Jim Adams, wanted him to help drive the cattle and Jim was working on the house and I wanted to come to Viper anyway and I said I would help him and he said all right and we brought the cattle on down there and had them in the ditch line about the railroad crossing and just a little above the railroad crossing—

"Court: Had them in what? A. Had them in the ditch line and he put me in the county road where it comes across the railroad and he got above it a ways there, south of the railroad crossing, and the train, we heard it blow away down the road about the High School building down there below Viper at Slab Town and it come on up there and it blowed about the bridge somewhere or near the bridge, I never looked around to see how close it was, but the cattle began to get scared and running along the ditch line and he started on there walking the ties and run a little piece and the cattle kept on running up the ditch line and he stepped over on the track and began to run and by that time the train was close to me and I started to holler at him and the train was in between me and him and I saw it was too late, saw him running in the track, bent over and I raised up then and as I raised up it struck him, throwed him off on the right hand side about, there was some kind of a mail halter or something, I don't remember what the name of it is, but it throwed him off near that."

The distance from the south end of the bridge over

Mace's creek to the center of the county road where Adams was standing is 229 feet. The distance from the center of the road south to the mail crane, the point where Adams testified the deceased was thrown from the track, is 123 feet, and the distance from that point to the north end of the depot is 18 feet.

Appellant's witness testified that he had ridden in the cabs of engines past the station at Viper in the position of the engineer and also in the position of the fireman. The engineer's position is on the right side of the cab and the fireman's on the left side. This witness stated that the positions occupied by the engineer and the fireman on the freight locomotives used on that particular line were between 55 and 60 feet from the front of the engine. He stated also that, because of the curve at Viper, the engineer would have no view at all of the portion of the track ahead of the engine, and that he estimated that the view of the fireman would be obstructed for 100 feet ahead of where he was located.

Bill Brashear, who was standing near the north end of the station with Earl Campbell and William Sizemore, saw the accident. He stated that, as well as he remembered, the train blew for the station about a quarter of a mile off, but that he never paid any attention to trains because "there are so many of them blows, I don't remember whether it blowed for the crossing or not." He stated also that:

"Mr. Browning was standing over there at the railroad crossing sign and I think he heard the train coming, but the cattle, when the train blowed, the cattle got scattered, started running up the right hand side of the track, and he got scared too, afraid they would get on the track, and he run beside the track for a piece trying to scare them back and I don't know what got wrong with him but for some reason or other about the time the train was on the crossing he started and stepped inside the rails and I seen the train was going to hit him and I turned my head off. That is all I know."

Brashear said he attempted to attract the attention of the fireman and that he signaled for him to stop, but that the fireman waved to him as the train went by, and that he, the fireman, "was looking ahead on the track where he was going."

As to the distance from the crossing to the point where Browning was hurt, Brashear testified:

"Q. 41. Where is that crossing from where Mr. Browning was hurt? A. The crossing was a rail length and three-fourths of another rail length from the crossing to where he was hurt."

On cross-examination Brashear testified:

"Q. 4. How far away was that engine away from him at the time he stepped on the inside of the rail? A. Why, about the crossing when he stepped over in the track, about a rail length and three-fourths.

"Q. 5. About what distance is that? A. Well, I'll say about 55 feet.

"Q. 6. Now, was this on a straight track or a curve? A. Pretty sharp curve there.

"Q. 7. At the point of the accident? A. Yes sir."

Brashear's testimony as to the distance the engineer and fireman could see up the track is entitled to little weight, when compared with that of appellant's engineer witness. But, be that as it may, and assuming that both the engineer and the fireman saw or could have seen Browning and Adams near the railroad crossing, there is no basis for charging appellant with Browning's negligence in stepping over in front of the train after it got up to the crossing. It is clear from the testimony of both Adams and Brashear that Browning did not get on the track until the train was only a very short distance behind him. According to the testimony of appellant's witness, it would have been virtually impossible for either the engineer or the fireman to have seen Browning at the time he ran in front of the train. There can be no question from the evidence that Browning knew the train was approaching. If both the fireman and the engineer had seen him when he ran onto the track, in all probability it would have been impossible for them to have stopped the train before striking him.

Browning left a position of safety knowing that the train was approaching, and ran upon the track a very short distance in front of the train. His own negligence caused his fatal injury. An examination of the

cases of Illinois Central Railroad Company v. Murphy's Adm'r, 123 Ky. 787, 97 S. W. 729, 30 Ky. Law Rep. 93, 11 L. R. A., N. S., 352, and Haley's Adm'r v. Chesapeake & Ohio Railway Company, 157 Ky. 208, 162 S. W. 827, 829, presents no such circumstances as those pertaining to Browning's fatal injury. In the Murphy case it was pointed out that: "No one testifies that deceased saw the train, or indicated by act that he was conscious of its proximity." [123 Ky. 787, 97 S. W. 730.] In the Haley case it was said:

"It is manifest that the facts of the instant case do not bring it within the rule applied in the cases supra [mainly cases relied upon by appellant herein]. Here the decedent did not get upon the track in front of an approaching train, the coming or proximity of which was seen by or known to her."

Appellee introduced considerable testimony concerning the use of appellant's track as a passway at the unincorporated village of Viper, and also the use of the track by children going to and from the school which is located about a quarter of a mile north of Viper at Slab Town. This was done with the view of attempting to show that appellant owed a lookout duty at this place. We do not deem it necessary to go into a lengthy discussion of this question, however, in view of our conclusion that Browning's own acts were responsible for his injury. Furthermore, he was struck on the part of the track between the crossing and the station. At this point, a road parallels the track on the side on which the depot is located. There is also a highway paralleling the track only a short distance away on the right-hand side; and, as we have seen, Browning was not using the track as a passway when he ran in front of the rapidly approaching train. He was running after the cattle.

After reviewing a number of cases involving circumstances similar to those in the case at bar, it was said in Cincinnati, N. O. & T. P. Railway Company v. Wallace's Adm'r, 267 Ky. 661, 103 S. W. (2d) 91, 94:

"In view of the law, as so declared in the cited cases, and many others that could be cited, the acts of negligence relied on in this case are unavailable to plaintiff, since his decedent, with knowledge of the situation, and of all the facts, abandoned her place of safety and suddenly imperiled her life by

"going almost immediately in front of a rapidly approaching freight train which could turn neither to the right nor to the left, but was compelled to proceed on the rails of the track as they were constructed, and which facts were also known by her."

In that case a judgment against the Railway Company was reversed because it was determined that a peremptory instruction should have been given in favor of the Company. See also Illinois Central Railroad Company v. Willis' Adm'r, 123 Ky. 636, 97 S. W. 21, 29 Ky. Law Rep. 1187; Wickham's Adm'r v. Louisville & Nashville Railroad Company, 135 Ky. 288, 122 S. W. 154, 48 L. R. A., N. S., 150; Helton's Adm'r v. Chesapeake & Ohio Railway Company, 157 Ky. 380, 163 S W. 224; Louisville & Nashville Railroad Company v. Fentress' Adm'r, 166 Ky. 477, 179 S. W. 419; Louisville & Nashville Railroad Company v. Taylor's Adm'r, 169 Ky. 435, 184 S. W. 371; Voorheis' Adm'r v. Chesapeake & Ohio Railroad Company, 220 Ky. 746, 295 S. W. 1031; Chesapeake & Ohio Railway Company v. Harrell's Adm'r, 258 Ky. 650, 81 S. W. (2d) 10; Louisville & Nashville Railroad Company v. Shaw's Adm'x, 264 Ky. 321, 94 S. W. (2d) 642; Chesapeake & Ohio Railroad Company v. Bryant's Adm'r, 272 Ky. 339, 114 S. W. (2d) 89.

Having reached the conclusion that appellant was entitled to a peremptory instruction, it is unnecessary to discuss the other questions raised.

Judgment reversed for proceedings consistent with this opinion.