## Louisville & Nashville Railroad Company v. Lawson.

(Decided November 13, 1914.)

### Appeal from Warren Circuit Court.

1. Railroads—Licensee Walking on Tracks—Duty of Company.—A railroad company does not owe to a licensee walking near its tracks the duty of slacking the speed of its trains in order to prevent his being sucked under the train.

2. Railroads—Injury to Licensee—Evidence of Similar Accidents—Admissibility.—In an action against a railroad company alleged to have resulted from plaintiff, a licensee, being drawn under defendant's train by suction, evidence that no such accident had ever happened before is admissible as having a strong and important bearing on the question whether or not the accident should have been reasonably anticipated.

BENJAMIN D. WARFIELD, CHAS. H. MOORMAN and SIMS & RODES for appellant.

BRADBURN & BASHAM for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On November 19, 1912, John W. Lawson, Jr., a boy fifteen years of age, and weighing about one hundred pounds, was run over and injured by a train operated by the Louisville & Nashville Railroad Company. The large toe of his left foot and his right foot and ankle were crushed. Suing by his father as his next friend he brought this action against the railroad company to recover damages. From a verdict and judgment in his favor for $5,500 the railroad company appeals.

The accident occurred just inside the limits of Smith's Grove, an incorporated town of about eight hundred inhabitants. Defendant's tracks run northeast and southwest through the town. Plaintiff resided with his father near what is known as Lawson's Crossing, some distance north of the depot. There was testimony to the effect that a pathway along defendant's tracks north of its depot and up to the second crossing above was used by the residents of the town of Smith's Grove living in that section and by others who lived three miles north of Smith's Grove. There were about a half dozen houses in that section of the town near the railroad right of way, and these houses were on macadamized streets. There were sidewalks on these streets leading to the town.

Briefly stated, plaintiff's account of the accident is as follows: Late in the afternoon on the day of the injury his mother sent him out to look for his father, who was expected to return home with a wagon and team. He went upon defendant's right of way at the second crossing north of its depot. He then started south along the pathway on defendant's right of way. After walking south for some distance he retraced his steps toward the crossing where he entered the right of way. He was walking for the purpose of keeping warm. He then turned and started south for the second time. After he walked some distance he saw a train approaching about one hundred feet from him. About six feet from the track was a small ditch. As the train approached he moved to the edge of the ditch. While walking along the edge of the ditch he was drawn under the train and engine. The train was going very fast. After receiving the injuries he called for help. A neighbor responded and took him to his home. Mr. Witherspoon, a resident of Smith's Grove, stated that he saw a freight train leave the station about the time the boy claims to have

been injured, and this train was going very fast; in his opinion its speed was twenty-five or thirty miles an hour. Some railroad postal clerks and others testified that they had seen mail bags and packages of papers which had been thrown from the train drawn under it. With the exception of one witness, none of them had ever seen a live object drawn under the train. That witness stated that upon one occasion he saw a man on a railroad platform sucked under a train. He refused to say who it was. Other witnesses testified that there was no suction toward a train until the train itself had passed and the air rushed in to fill the vacuum made by the passing train. Defendant's witnesses testified that the speed of the train it is claimed struck plaintiff was not greater than eight or ten miles an hour. The train consisted of an engine and about thirty-three freight cars, and it was impossible, within the short space lying between the depot where it was stopped and the place of the injury, to have gotten up its speed of twenty-five or thirty miles an hour. These witnesses all testified that they had never heard of any live object being sucked under a train. The engine of the train was examined at Rowletts, a station north of Smith's Grove, and there were no marks on it indicating that anyone had been struck by it.

Briefly stated, plaintiff contends that the recovery in the lower court is proper for the following reasons: The evidence shows that defendant's right of way was used as a footpath by a large number of persons with the knowledge and acquiescence of the railroad company. The accident occurred in an incorporated town. Plaintiff, therefore, was not a trespasser, but a licensee. In approaching the place where plaintiff was injured it was the duty of the defendant to keep a lookout and give timely warning of the approach of its trains and to use ordinary care in the operation of its trains not to injure anyone walking along its right of way. Plaintiff's case, however, is not based on a failure to keep a lookout or to give proper signals of the approach of the train. Though plaintiff says he did not hear the signals, he admits that he saw the train approaching. No signals were therefore necessary to apprise him of that which he already knew. The sole ground of negligence relied on is that defendant failed to moderate the speed of the train so as to prevent plaintiff's being drawn thereunder.

In discussing defendant's liability we shall assume that plaintiff was a licensee, and that there was evidence tending to show that the freight train in question was moving about twenty-five or thirty miles an hour. The question sharply presented then is, does a railroad company owe to a licensee walking near its tracks and who knows of the approach of the train the duty of slackening the speed of its trains in order to prevent him from being sucked under the train?

While it may be true that evidence of witnesses that they had never heard of a particular accident does not show that such an accident had never happened, or that it should not have been anticipated, Trinity & B. V. Ry. Co. v. McDonald, 160 S. W., 984, yet this rule, we take it, is not without qualification. Every day hundreds of trains are run at the rate of 25 or 30 miles an hour. These, trains pass hundreds and perhaps thousands of persons standing within five or six feet of the track. If the suction from trains were great enough to draw persons under the trains, there would have been innumerable accidents of the kind under consideration. Notwithstanding this fact, several railroad men, who certainly had an opportunity to speak from long experience, say that they never heard of a live object, capable of resisting, being sucked under a train. Not only so, but the only two cases that have ever come before the courts, so far as we know, are the case under consideration and the case of Graney, et ux v. St. Louis, I. M. & S. Ry. Co., 57 S. W., 276, where a recovery was denied on the ground that the accident, even if it took place as claimed by plaintiff, was not one that might have been reasonably anticipated. Where in a case like this it is contended that the accident was the result of the negligence of the railroad company, combined with the operation of a natural law, and where not only the character of the accident, but the conditions attending the every day operation of trains, are such that the accident would have frequently happened if the natural law were such as to make it possible, we conclude that evidence to the effect that no such accident had ever happened has a strong and important bearing on the question whether or not it should have been reasonably anticipated. We deem it unnecessary for the purposes of this case to pass on the question of the possibility of such an accident. We content ourselves with saying that,

even if possible, the probability of its occurrence is so remote that it cannot be said to be an accident which should, in the exercise of ordinary care, be reasonably anticipated by those operating railroad trains. That being true, a railroad company does not owe the licensees walking along the side of its tracks, and who know of the approach of its trains, the duty of moderating the speed of the trains so as to prevent their being sucked under the trains. This court has adopted a very liberal rule with respect to licensees on tracks of a railroad company. Where in populous or thickly settled communities the tracks are used by such large numbers of persons that the presence of persons on the tracks may be reasonably anticipated, we are committed to the doctrine that it is the duty of the company under such circumstances to keep a lookout, to give warning of the approach of the train, and to have the train under reasonable control. I. C. R. R. Co. v. Murphy's Admr., 123 Ky., 187. The reason for requiring trains to be under reasonable control is to make the look-out effective; that is, to enable those in charge of the trains to stop them when persons are seen on the tracks or so near them as to be in danger of being struck by the trains. Here we are asked to go a step further and to say that the speed of the train must be reduced, not only to avoid striking persons on or near the tracks, but to prevent persons otherwise in a place of safety from being sucked under the train. Even in the Murphy case the court said:

"To compel railroad trains to creep along under full control in anticipation of what probably would not occur, viz.: the meeting or overtaking of a stray trespasser, would not be reasonable because most likely wholly unnecessary."

The danger of striking a trespasser is infinitely greater than the danger of injuring a licensee by suction. Trespassers are frequently killed. The number of persons actually sucked under trains, even if such cases ever occur, is so infinitesimally small it would certainly be unreasonable to require railroad companies to reduce the speed of their trains for the purpose of avoiding such accidents. If there be any danger from suction, certainly a licensee who knows of the approach of a train, and has a reasonable opportunity to do so, must get away from the track a sufficient distance to avoid being injured in that way.

In our opinion, the trial court erred in not directing a verdict in favor of defendant.

Judgment reversed and cause remanded for proceedings consistent with this opinion.