## Louisville & Nashville Railroad Company v. Stokes' Administratrix.

(Decided October 12, 1915.)

### Appeal from Hopkins Circuit Court.

Railroads—Personal Injuries—Evidence.—In an action against a railroad by the administratrix of a decedent to recover damages for his death, based on the alleged failure of the company to use ordinary care to avoid injuring him after his peril was discovered, evidence examined and held insufficient to take the case to the jury.

LAFFOON & WADDILL and BENJ. D. WARFIELD for appellant.

GORDON & GORDON & COX, V. Y. MOORE and FOX & POWELL for appellee.

Opinion of the Court by William Rogers Clay, Commissioner.—Reversing.

On January 18th, 1913, James D. Stokes was struck and killed by a train owned and operated by the Louisville & Nashville Railroad Company. In this action by his administratrix to recover damages for his death, there was a verdict and judgment in favor of the plaintiff for $5,000.00. The railroad company appeals.

It is not insisted that the defendant owed the decedent the duty of using ordinary care to discover his peril or that his peril could have been discovered sooner than it was by the exercise of ordinary care. The only ground on which the case was submitted to the jury was the failure of the defendant, its agents and servants to use ordinary care to avoid injuring the decendent after his peril was discovered. Defendant insists that the trial court erred in refusing it a peremptory instruction. The question turns on whether or not there was sufficient evidence to take the case to the jury.

The accident occurred at 6:20 P. M. at the Madisonville station. A concrete platform extends along the entire front of the station building. The platform is 11½ inches higher than the track and is 23 inches from the edge of the innermost rail. The train which struck decedent consisted of an engine and tender, baggage car, combination car, ladies' coach, and another car known as a "Miners' Rescue Car." The coaches were about 60 feet in length. The train started for the purpose of setting out the "Miners' Rescue Car." The decedent was standing on the steps of the ladies' coach, the second coach from the rear. While the train was going at the rate of about 5 or 6 miles an hour, he stepped off with his "left foot backward." He fell with his head towards the north and rolled from the concrete into the place between it and the rail. The record is silent as to the nature of his wounds. He lived but a short time.

Plaintiff relies on the following evidence: The two rear coaches and the space betwen them measured 125 feet. Plaintiff was not struck by the front trucks of the ladies' coach 'but fell around them on the concrete and rolled towards the train. Riordan, the engineer, says that he had his hand on the throttle or brake valve when he received a signal by the bell cord and stopped the train within about 10 or 12 feet. Jones, the porter, said

that he presumed the signal from the conductor went immediately to the engineer; that the train could have been stopped by service application of the air brakes in about 10 feet. Bohon, another witness, stated that the signal by means of the whistle cord was transmitted instantaneously and that the engineer, after receiving the signal, ought to stop the train in about 8 or 10 feet. Canstler, who had had some experience in railroading, said that the time necessary to transmit the signal by means of the bell cord was so short he did not know how to express it. It further appears that the conductor was just mounting the steps of the combination coach when the decedent fell and he saw decedent fall. J. T. Smith testifies as follows:

"Q. Describe to the jury what happened to him after he fell in that position? A. The train passed on over him, and when the springs would pass over him they would sorter catch in his coat and sorter jump him up, and he would fall back, and when the last coach went over him that doubled him up. Q. When the springs or the parts of the car that extended towards the concrete would pass over him it would brush his coat? A. Brush his coat up a little. Q. And when the hind end of the last coach passed over him it doubled him up. A. Yes sir. Q. Mashed him over? A. Yes sir. Doubled him over."

Yateman Cox, appellant's flagman, testifies as follows:

"Q. Where were you at the time of this occurrence; tell the jury what you heard and saw concerning that matter? A. I was on the rear platform of the train. Q. Let this represent the train. (Attorney places some books on the floor to represent the train.) A. I was standing on the rear end of the platform taking down my markers when I first noticed the accident; the car bumped like it had run over a stick or broken rail; I was leaning back taking my markers down to change from this car to this one on account of switching this car off by the ice plant. When I heard the noise I was in such a position I could not look—like this—(indicating) and I had to turn around, and when I turned around I noticed a man lying on the track. Q. You did not see Mr. Stokes falling? A. No sir. Q. The first you knew of his falling the rear wheel of the mine rescue car ran over some substance? A. Yes sir."

Cox further testified that the train stopped in about eight feet after he heard the signal.

For the defendant the conductor testifies that he was on the station platform when decedent fell. It took him eight to ten seconds to get from the platform to the platform of the car. It took an interval of from one to two seconds between the pull of the cord to give the signal properly. He gave the signal as soon as he could.

There is evidence pro and con as to whether or not decedent was intoxicated.

From the above facts the following argument is made by plaintiff: The evidence shows that decedent was not injured until struck by the rear trucks of the last car. These trucks were 117 feet from the place where decedent fell. The train was going about 5 miles an hour or $7^1/_3$ feet per second. An interval of $15^{21}/_{22}$ seconds elapsed between the time decedent's peril was discovered and his injuries were inflicted. In view of the evidence to the effect that it would require but a second or two for the conductor to reach the platform, another second or two to pull the bell cord and another second or two for the engineer to stop the train, it is claimed that the evidence shows the conductor was guilty of negligence in not sooner transmitting the stop signal. The difficulty with this argument is that it grows out of the assumption that the evidence of Smith and Cox was sufficient to show that the decedent was injured by the rear trucks of the train, and that men in an emergency think and act almost instantaneously. Cox's evidence merely tends to show that the decedent was struck by the trucks of the last car. It does not tend to show that he had not been previously struck by that car or the one preceding. Smith says that when the springs would pass over decedent "they would sorter catch in his coat and sorter jump him up, and he would fall back, and when the last coach went over him that doubled him up." In reply to the suggestive question, "When the springs or the parts of the car that extended towards the concrete would pass over him it would brush his coat," he said: "Brush his coat up a little." It is manifest that this evidence does not possess the quality of proof. It is not sufficient to induce conviction. It by no means follows that, because the parts of the train "jumped him up" or "brushed his coat up a little," the contact of the train with decedent's body was not sufficient to injure him. Here the decedent fell on the concrete. He rolled in between the concrete and the track. Being a man, it was practically impossible to

place him between the rail and the concrete so that his body would not come in contact with some part of the car. All that the witness Smith says may be true and yet the decedent may have been seriously injured by parts of the car other than the rear trucks of the last car. Unfortunately, too, men do not think and act in an emergency with the same dispatch with which others, in their calmer moments and who are free from the excitement of the occasion, think they should have acted. It necessarily took some time for the decedent to fall to the concrete and roll under the train. It took some time for the conductor to realize and appreciate the peril in which he was thus placed. It took some time for him to decide on what was best to be done. It took further time for him to mount the steps and reach the bell cord. It took further time for him to give the proper signal to the engineer. It took further time for the engineer to think and act. It took further time for the train to stop after the engineer had acted. It seems to us, therefore, that the statements of the witnesses that a particular thing could have been done instantaneously, or another thing in a second or two, or that the train could have been stopped in from 8 to 10 feet, are mere speculations, based on what might have possibly happened if all the participants were apprised beforehand what would take place, and the verdict of the jury, founded on such statements, is mere guesswork. Neither courts nor juries are authorized to indulge in speculation or guesswork as to the cause of accidents. To authorize a recovery there must be some tangible evidence from which it may be fairly inferred that the defendant was guilty of negligence, and that such negligence was the proximate cause of the injury. If the injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject him to liability, then the well-settled rule is that a recovery cannot be had. Stuart v. N. C. & St. L. Ry., 146 Ky., 127; Wiedekamp v. L. & N. R. R. Co., 159 Ky., 674; Osborne's Admr. v. C., N. O. & T. P. Ry., 158 Ky., 176; L. & N. R. R. Co. v. Stayton's Admr., 163 Ky., 760. In our opinion, the trial court should have directed a verdict in favor of the defendant.

Judgment reversed and cause remanded for a new trial consistent with this opinion.