## Kelch's Administrator v. National Contract Company.

(Decided January 15, 1918.)

### Appeal from Campbell Circuit Court.

1. Negligence—Definition.—Negligence is the failure or omission to do or refrain from doing that which an ordinarily prudent person would do or refrain from doing under the same or similar circumstances, and if the circumstances are such as to cause a sudden emergency which was neither produced nor contributed to by the one required to act and he chooses the course that turns out to be less safe than another he will not be convicted of negligence for choosing the course which proved, by subsequent events, to be less safe than the other, provided that the one he chose appeared to be reasonably safe.

2. Negligence—What Necessary to Sustain Action on.—In order to sustain a 'cause of action based on negligence there must not only be testimony tending to establish the negligence, but the injury complained of must have resulted as a natural sequence of the negligence so as to be the proximate result of it.

E. J. WRIGHT and JAMES C. WRIGHT for appellants.

HARRY BRENT MACKOY and MACKOY & MACKOY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

By this suit the appellant, administrator of Allie Kelch, seeks to recover from the appellee (defendant below) damages accruing to the estate of the deceased because of his death, which is charged to have been produced through the negligence of the defendant. The negligence relied on was traversed by the answer, which also contained defensive pleas of contributory negligence and assumed risk, both of which were denied by a reply, thus forming the issues.

At the close of plaintiff's testimony the court sustained defendant's motion for a peremptory instruction, directing the jury to return a verdict in its favor, which was done, resulting in the judgment dismissing the petition, and to reverse it plaintiff prosecutes this appeal.

The facts and conditions occurring at and surrounding the accident are substantially these: The defendant was engaged in constructing a dam in the Ohio river, and as an adjunct to the work it had built a coffer-dam, which is intended to be a water-tight inclosure resting in the bottom of the river, and out of which the water it

contains is lifted by pumps which are operated by machinery contained in a boat which the coffer-dam incloses. The water from the pumps (there being five in this instance) is emptied into a sluiceway or chute connected in some way with the coffer-dam at or near its top, and is conveyed through the chute into the river below. The chute was about thirty feet long, eight feet wide and four feet deep, and there was a considerable decline from the point where the water was pumped into it to where it emptied into the river. Each pump lifted a stream about fifteen inches in diameter and the quantity of water thus put into the chute with its decline produced not only a rapid current in the chute, but also in the stream for quite a distance from the mouth of it. The machinery which ran the pumps, and which was located in the boat, was something like twenty feet below the top of the coffer-dam, and that much below the place where decedent with two fellow workmen was engaged in adjusting a ratchet to the upper end of the chute, and while thus engaged, in some way not made clear, the decedent fell into the chute and the force of the water carried him into the river, resulting in his being drowned within about two minutes after his fall.

The negligence relied on is that decedent could and would have been able to extricate himself but for the rapid current produced by the water from the chute which defendant through its agents and servants neglected to stop by shutting off the pumps after they discovered the perilous situation of decedent, it being charged that proper care on their part demanded that such action should be taken and that if it had been decedent could have been rescued either through his own efforts or those of others, and he would not have been drowned.

The proof shows that no regular foreman or superior servant was in immediate charge of the work in which the decedent was engaged with reference to the adjustment of the ratchet. However, one of the three so engaged was a brother of the foreman having charge of the general work, and the testimony shows that if anything happened the brother would take charge or notify the regular foreman. At the particular time of the tragedy all three seem to have been engaged in the same character of work. As soon as the decedent fell and was carried into the river below, his two companions almost immediately procured a contrivance called a "key form" or

"key box," which is made of wood and is used in the construction of concrete work, and attempted to get it to decedent so that with its use he might assist himself to remain on top of the water and get to a place of safety, but, although they got the key box sufficiently near for him to have reached it, he failed to do so. About that time, or perhaps just before, one of the two hallooed to the fireman and engineer operating the pumps twenty feet below to shut off the engine, but the running of the water through the chute, together with the operation of the machinery, made such a noise that this command was not heard, whereupon one of the two companions (the foreman's brother) descended on a ladder and notified the fireman to stop the machinery, which he immediately communicated to the engineer and the pumps were stopped. From the time decedent fell into the chute until he is supposed to have sunk the last time was not exceeding two minutes, according to the uncontradicted testimony. It is shown by all the witnesses that decedent was about 23 years old, an athlete, and a very expert swimmer, which facts his two companions knew. When they were endeavoring to get the key box to him he was laughing, but said to them, "Hurry up." When the brother of the foreman descended the ladder and gave instructions for the machinery to stop, he first procured a spike pole, which was at some place near the machinery, with which we presume (though it is not shown) he intended to assist the decedent in getting out of the water, as he was only from ten to fifteen feet from its edge. It is insisted that because immediate orders were not given for the machinery to stop, and because the foreman's brother took time to pick up the spike pole before giving orders for the machinery to be stopped after descending on the ladder, defendant was guilty of such omissions as entitled the case to go to the jury under proper instructions, and that the court erred in giving the peremptory instruction complained of.

Before considering that question a preliminary one is presented, which is discussed at some length by counsel for both parties, it being whether the brother of defendant's foreman or anyone else had charge of the work or was in any sense a superior to the decedent at the time. But under the view we take of this case we do not deem it necessary to determine that question, for, conceding for the purpose of this case only that there was a superior servant in charge of the work, and under whom

decedent was engaged at the time, we are convinced that the proof fails to show actionable negligence on the part of anyone, or that any such alleged negligence was the proximate cause of decedent's death. As stated, only two minutes elapsed from the time plaintiff's decedent fell until his final disappearance. His companions had to act in an emergency. Almost immediately after decedent was cast into the river he emerged some ten or fifteen feet from the edge of the water. He was laughing at the time and showed no signs of distress. His companions knew that he was an expert swimmer, but, notwithstanding this, they immediately procured the only available instrument whereby he might be assisted, and did everything that a reasonably prudent man could have done to place it at the disposal of the decedent, but for some unexplained reason he failed to take hold of it, although at the time he was not in the current produced by the water from the chute. Orders had already been attempted to be conveyed for the machinery to be stopped, and as soon as it developed that the key box was unavailable for the purpose intended, those in charge of the machinery were notified to stop the pumps in the only way possible, which was to descend the ladder and notify them to do so.

Negligence in law, for which the one guilty of it is liable, is a relative term dependent upon the circumstances and conditions, and is a failure or omission to do or abstain from doing that which an ordinarily prudent man would do under the same conditions or circumstances. In cases of emergency, neither produced nor contributed to by the one seeking to rely on it, a failure to choose the safer of two courses of action as manifested by subsequent events will not constitute negligence when the course selected was one dictated by ordinarily prudent action, and such as an ordinarily prudent man would have selected under the circumstances. Schroeder v. St. Louis Transit Co., 111 Mo. App. 67; Moore v. Maine Central R. Co., 106 Maine 297, and 29 Cyc. 434. The principle is thus briefly stated in the volume of Cyc. referred to: "And if an act has to be performed in a brief period with no time in which to determine the best course, negligence cannot be predicated of it." The quotation from the text is supported by many authorities from different courts, and is analagous to that rule so universally applied by this court to the effect that a plaintiff is not guilty of contributory negligence if being placed in emer-

gency through the negligence of defendant he fails to choose the safest course to relieve himself when to have done so he would not have been injured. Geary v. McCreary, 147 Ky. 254; C. & O. Ry. Co. v. Brown, 152 Ky. 479; Inter-State Coal Co. v. Love, 153 Ky. 323.

In this case the emergency was the result of no fault of any servant of defendant superior to deceased or otherwise. Each of the ones present appear to have acted with prudence and consideration. They no doubt believed that they had been heard when they hallooed for the pump to be stopped. There was no time to be lost in waiting to see. What deceased most immediately needed was something upon which he could rely to prevent his sinking and to assist him to get to a place of safety. The only available thing was procured and every effort made to accomplish with it the purpose intended. When it was found that such efforts were fruitless, with all reasonable dispatch the pumps were ordered to be and were stopped. Can it be said under the facts of this case and the rule of law referred to that the agents or servants of defendant were guilty of negligence in the particulars charged because, forsooth, they did not first see to and procure the stopping of the pumps? We think not. To have thus consumed the time required may have been to no purpose after all, and also may have been at the expense of a possible chance to save the life of deceased, and the law does not demand in such emergencies mathematical accuracy or conduct of exact calculation so as to fasten liability on the actor should he miscalculate as to the proper things to do and the order in which they should be done.

Passing this question, however, it was essential to plaintiff's recovery that there should have been some evidence showing that the complained of negligence was the proximate cause of the decedent's death. Or, conversely stated, that his death must have resulted as a natural sequence from the alleged negligence. It is true that the current below the mouth of the chute would have largely abated if not entirely ceased if the water from the pumps had been stopped, but the evidence wholly fails to show that if this had been done the decedent's life would have been saved, for, as we have heretofore seen, he was not in the current at the time his companions attempted to rescue him. Other causes than the continuous flow of the current may have contributed to his being drowned; but, however this may be, the evidence, accord-

ing to our view, wholly fails to establish any omission on the part of any of the servants of the defendant which in any phase of the case could be construed into negligence.

This being true, the court did not err in sustaining the motion for a peremptory instruction to find for the defendant, and the judgment is affirmed.