## Louisville & N. R. Co. v. Henry's Adm'r.

(Decided Nov. 17, 1933.)

ASHBY M. WARREN, MATT HEROLD and GEO. J. HEROLD for appellant.

A. C. HALL and SAWYER & PICHEL for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The administrator of Anna Laura Henry recovered a $1,500 judgment for her death against the Louisville & Nashville Railroad Company, and it has appealed. This account of the accident is copied from appellee's brief:

"Fourth Street in the City of Newport, Kentucky, is one of the main highways in said city. It runs east and west. Saratoga Street is another highway

in said City over which the appellant owns and operates a line of steam railroad, and it runs north and south. The appellant, for many years prior to the accident maintained watchmen both day and night at said crossing. On the 9th day of May, 1930, about noon, Anna Laura Henry, a little colored girl, about eight years old, with some of her companions came from the Colored Public School, traveling on the easterly side of Saratoga Street southwardly to the northeast corner of Fourth and Saratoga Streets. When the little girl reached the intersection she was desirous to cross Saratoga Street and appellant's railroad tracks to proceed westwardly over Fourth Street to the home of her parents. At this time there was an engine and caboose of the appellant coming southwardly over the bridge, she then started running westwardly across the railroad track, and while proceeding in that course she was struck by the engine and knocked down and the engine ran over her crushing out her life. The little boy ahead of her escaped. Witnesses testified that at the time the little girl started across the street and the railroad track the watchman was absent from his post of duty to warn traffic of the approaching train. It is shown by a number of witnesses that the watchman was then just leaving his shanty. There is evidence of several witnesses that when the little girl started across the railroad track the watchman started 'hollering' at her and he then ran out in the street, all of this time he was 'hollering' and gesticulating with his hands and with the stop sign saying, 'go back, go back or you will be killed.' But at this time the little girl was at the west rail and about ready to step over to a place of safety, and at that time the engine was several feet away, while the little girl was at the point mentioned, ready to cross the west rail out of danger, the watchman then 'hollerin' and waving at her as though to strike her so frightened the little girl and placed her in such fear that she was caused to turn and retrace her steps toward the east side of the track and while so doing the engine struck and ran over her and caused her death.''

For the purposes of this opinion we have accepted all of that as true, and that neither was the bell ringing

or the whistle blowing, but the evidence shows the unfortunate girl and a number of schoolmates were running along beside the train or perhaps just a little ahead of it, and she had one of these companions by the hand, and the two were running together, and apparently were contemplating beating the train over the crossing, when her companion said to her, "We can't make it," and stopped. Anna Laura replied, "Yes, we can make it," and releasing her hold of her companion's hand started running, with the result noted above. There are two features upon which the unfortunate child's administrator rests his claim for recovery, which we shall consider; they are somewhat inconsistent, but we shall treat them as though entirely consistent and fully established.

### The Absence of the Watchman.

If the watchman had been at his post, all he could have done would have been warn the child of the approach of the train, and this the child knew and was endeavoring to beat the train over the crossing, so the absence of the watchman from his post did not influence her conduct. It may be argued that had he been there he might have advised the child she could not make it, and here we are met by the fact she had already been so advised by her companions, and we can have no assurance she would have heeded his advice when she had disregarded that of her companions. It might be suggested that had the watchman been at his post he could possibly have caught up the child in his arms and carried her to a place of safety, but there is no evidence he could have done so without imperiling his own life. Hence we conclude the absence of the watchman in no way contributed to the child's death.

Appellee cites and relies on cases of Louisville & N. R. Co. v. Roth, 130 Ky. 759, 114 S. W. 264; Illinois Cent. R. Co. v. McGuire's Adm'r, 239 Ky. 1, 38 S. W. (2d) 913; Cincinnati, N. O. & T. P. R. Co. v. Prewitt's Adm'r, 203 Ky. 147, 262 S. W. 1; and Payne v. Barnette's Adm'r, 196 Ky. 489, 244 S. W. 896. But this child saw this train and knew of its approach when yet in a place of safety, and that cannot be said of the parties injured in the cited cases.

### The Acts of the Watchman.

Considering now the other contention of the child's administrator, that the watchman was out in the street

and did call out to the child to "go back" and did motion and direct her to do so, which she did and was killed, and that had he not done so the child would have escaped injury, the plaintiff is met by the fact that what the watchman did was done in an emergency, and where one is confronted with a sudden emergency, without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required if he had time for deliberation. See 45 C. J. p. 710, sec. 92; also, Kelch's Adm'r v. Nat. Contract Co., 178 Ky. 632, 199 S. W. 796; Louisville & N. R. Co. v. Wright, 193 Ky. 59, 235 S. W. 1; Louisville & N. R. Co. v. Stokes' Adm'x, 166 Ky. 142, 179 S. W. 47; Kentucky T. & T. Co. v. Brackett, 210 Ky. 756, 276 S. W. 828.

This case is so much like the case of Illinois Cent. R. Co. v. Dupree, 138 Ky. 459, 128 S. W. 334, 34 L. R. A. (N. S.) 645, that we got that record and examined it, and in it there is evidence that a brakeman who was riding on the pilot of the engine reached over and tried to catch the Dupree child, and that she fell, the witness said, "I dont know whether it was the lick or what. As he touched her, her feet caught in the rail and she fell."

There is no way to distinguish that case from this one. Looking back on all this, we may surmise that if the watchman had not motioned and called to the little girl to go back she might have escaped; but if he had done nothing and the child had not escaped, then it could just as plausibly have been argued that if he had motioned or called to her to go back she would have done so and thus escaped. Again the Dupree Case is like this one, for there the members of the jury may have concluded that if the brakeman had not tried to catch that little girl she would not have stumbled and would have escaped, yet if the brakeman had done nothing then some of them might have concluded he should have tried to catch her. In emergencies where whatever is done must be instantly done, the law does not ordinarily impose liability for what is done. Other applicable cases are: Chesapeake & O. R. Co. v. Hunter's Adm'r, 170 Ky. 4, 185 S. W. 140; Newport Rolling Mill Co. v. Mason, 152 Ky. 227, 153 S. W. 220; Louisville & N. R. Co. v. Molloy's Adm'x, 122 Ky. 235, 91 S. W. 685, 28 Ky. Law Rep. 1113.

Regrettable as is the death of this child, we are un-

able to find any evidence that the Louisville & Nashville Railroad Company is culpably responsible therefor, and the court should have directed a verdict for it.

Judgment reversed.