## Chesapeake & Ohio Ry. Co. et al. v. Harrell's Administrator.
## Same v. Wilson's Administrator.
## Same v. Striegel's Administrator.

(Decided Oct. 5, 1934.)

E. P. HUMPHREY and MARVIN H. TAYLOR for appellants.

BOOTH & CONNOR, CHARLES W. MORRIS, and FRANK A. GARLOVE for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The Chesapeake & Ohio Railway Company and the Louisville & Nashville Railroad Company have appealed from three judgments of $6,500 each recovered against said companies by Fred Wade as administrator of

Andrew L. Striegel, Wm. M. Harrell, and Wm. Wilson for the alleged negligent killing of his intestates. These cases were heard together in the trial court, were considered together in this court, and we shall dispose of them in one opinion.

We shall refer to the appellees as plaintiffs, and to the appellants as defendants.

### The Place of the Accident.

The city of Anchorage is an incorporated city of the sixth class about fifteen miles east of Louisville. In reality, it is a suburb of the larger city.

In the center of the town there is a public crossing, at which point the tracks of the Louisville & Nashville Railroad Company meet and intersect Kentucky Highway No. 22, a public highway connecting Louisville with Anchorage, La Grange and Carrollton. It was at this place that appellee's intestates came to their death.

About 335 feet east of the crossing, there is a station maintained and used by appellants. At the crossing there are two railroad tracks, about 13 feet apart. Just outside the eastern limits of Anchorage, the road crosses the tracks again, but at that point the double tracks constitute a switch. Between that point and La Grange the highway crosses the track five times, and at all of these crossings there is a single track.

It will thus be seen that travelers approaching Anchorage from La Grange had every reason to believe and no reason to doubt that there was but a single track at the crossing.

After the highway crosses the tracks at the switch, at the east end of the station, it turns to the right and runs parallel with the right of way for some distance, but the surface of the road is approximately 7 feet lower than the tracks. To add to the traveler's difficulty, there is some shrubbery along the south side of the tracks, which further obstructs the view.

At the time of the accident, when the highway reached a point approximately opposite the crossing, it turned to the right again and had an upgrade to the tracks. At the turn of the road, about 30 feet from the the track, the railroad company had marked "STOP" across the road. Six feet from the edge of the road

there was a standard holding a gong and flash-light. The light was 11 feet higher than the surface of the road at the stop line; and it was with some difficulty that a motorist could see the light, if his car was parked at the stop line.

Strangers, as these men were, approaching the crossing from the east, had no notice this was a double track at the crossing. The elevation of the tracks, plus the shrubbery, concealed the double tracks. The grade at which the highway approached the tracks after making the turn obstructed to some extent a motorist's view of the warning signal.

On Saturday, May 29, 1931, at 7:06 p. m. and shortly before sundown, the men now dead were en route from Carrollton, Ky., to Perryville, Tenn., in an automobile belonging to their employer, Jim Smiley. He had loaned the car to them, and there is no evidence showing who was driving it at the time of the accident.

As the automobile approached the crossing from the south, the way was blocked by an east-bound freight train, which not only prevented the driver from seeing that there were two tracks at the crossing, but undoubtedly prevented him from seeing the approach of the west-bound passenger train, which was on the north track.

The automobile stopped immediately south of the south track for the freight train, going east, to pass. The moment the rear car (the caboose) of the freight train cleared the crossing the plaintiffs' decedents drove ahead northwardly onto the north track, where the automobile was struck by a passenger train of the Chesapeake & Ohio going west. The plaintiffs' decedents had not waited until the rear end of the freight train had cleared the crossing a sufficient distance to enable them to get a reasonable view eastwardly along the north track, and the enginemen of the Chesapeake & Ohio had no chance to see the automobile until immediately before the accident.

These men were riding in a Ford coupe, and as they started over this crossing they were going about five miles per hour. The passenger train was going about twenty miles per hour, or four times as fast as the automobile. The engineer of the Chesapeake & Ohio was on the right-hand side of the locomotive and the

boiler cut off his view of the automobile, but the fireman saw it crossing the south track, some 12, 13, or 14 feet from the north track upon which the Chesapeake & Ohio was traveling. He testified it was going slow, and "I did not know what he was going to do until he got on to the track, and I saw he was coming on and hollered to the engineer 'That will do,' and I jumped over behind the boiler to avoid being hit by flying glass or anything."

The engineer at once applied his brakes in emergency. The locomotive and three cars passed over the crossing, one car was on it, and one to the east of it when it stopped. The automobile either struck the left side of the locomotive or the locomotive struck the automobile, pushed it off to the left, and it was rolled and dragged along by the left side of the train.

No whistle had been blown by the engineer of the Chesapeake & Ohio train nor was the engine bell ringing and the defendants to excuse themselves for not giving such signals had pleaded and put in evidence an ordinance of the city of Anchorage forbidding the ringing of an engine bell except when a train is being started or the blowing of an engine whistle, except to prevent a collision or in case of imminent danger.

### Where Is the Negligence?

All evidence of crossing signs, bells, and gongs, to give notice there was a railroad crossing there, is of no importance; the decedents saw such was the case and had stopped because a train was passing over it. No signals were necessary to apprise them of what they already knew. Louisville & N. R. Co. v. Lawson, 161 Ky. 39, 170 S. W. 198, L. R. A. 1917B, 1161; 52 C. J. p. 577, sec. 2139.

It is argued this Chesapeake & Ohio passenger train should have given a signal of its approach to this crossing and that the ordinance of Anchorage that forbade the giving of such signals is invalid; but we have held otherwise. Louisville & N. R. Co. v. Galloway, 219 Ky. 595, 294 S. W. 135, and Louisville & N. R. Co. v. Louisville Provision Co., 212 Ky. 709, 279 S. W. 1100. See, also, section 786 Ky. Stats.

### Whistling in an Emergency.

The plaintiffs call attention to the provision of the ordinance permitting a whistle to be blown to prevent

a collision or in case of imminent danger. We do not know how far the decedents were from the crossing when the fireman saw "they were coming on." He says "12, 13, or 14 feet," then we know, since the engine was moving four times as fast as the car, that the latter was then 48, 52, or 56 feet from the crossing, and the plaintiffs seek to show the fireman was negligent and they say in brief here, and perhaps said to the jury:

> "We insist that it would have taken no longer to say 'Whistle' or 'Sound whistle' or 'Whistle quick' or even 'For God's sake, whistle,' than it took to say 'That will do'."

There was proof this automobile in which decedents were riding was equipped with such brakes that, when going five miles per hour, it could be stopped within one foot, and it is argued that if the whistle had been blown and the decedents had heeded the blast, this automobile could have been stopped and the lives of the decedents spared.

### Acts in an Emergency.

From the proven speed per hour, we know this automobile was moving about 7½ per second and this passenger train about 30 feet per second, and there was in this case less than two seconds in which to do anything; still the plaintiffs insist the defendants are liable because in this emergency the fireman told the engineer to stop instead of telling him to blow the whistle. This is just another case of hindsight being better than foresight. The jury was in a very different frame of mind from what this fireman was.

The jury could take all the time it wished in which to reflect and determine what would probably be the best course to pursue, whereas the fireman had less than two seconds to tell the engineer of the peril he foresaw and to get himself into a place where he would himself be safe from, what to him appeared to be, an imminent danger. Men when so confronted cannot be expected to do exactly the proper thing. See 45 C. J. p. 710, sec. 92.

In the case of Louisville & N. R. Co. v. Henry's Adm'r, 252 Ky. 278, 66 S. W. (2d) 818, the little girl might possibly have escaped if the watchman had not

told her to go back. In the case of Illinois Cent. R. Co. v. Dupree, 138 Ky. 459, 128 S. W. 334, 34 L. R. A. (N. S.) 645, that child would possibly have escaped if the brakeman had not tried to save her as we pointed out in the Henry Case. In the case of Kelch's Adm'r v. National Contract Co., 178 Ky. 632, 199 S. W. 796, there can be but little doubt that Kelch was drowned because his fellow workmen in their excitement failed to give him the proper assistance, yet in all these cases this court said peremptory instructions were proper. Other cases to same effect are: Louisville & N. R. Co. v. Dooley's Adm'r, 220 Ky. 67, 294 S. W. 810; Kentucky T. & T. Co. v. Brackett, 210 Ky. 756, 276 S. W. 828; Kentucky T. & T. Co. v. Roschi's Adm'r, 186 Ky. 371, 216 S. W. 579; Louisville & N. R. Co. v. Wright, 193 Ky. 59, 235 S. W. 1; Louisville & N. R. Co. v. Stokes' Adm'x, 166 Ky. 142, 179 S. W. 47.

## The Invitation to Guess.

The plaintiffs invited, and the instructions permitted, the jury to guess that a blast of the whistle would have saved these men because they supose they would have heard it, would have looked and seen the approaching train, and would have stopped. No mortal man can know what they would have done in the less than two seconds that they had in which to do anything. One may guess they would have stopped, or just as rationally guess that they would have "stepped on the gas" and endeavored to beat the train over the crossing. With all the maps, the pictures, the measurements, and the testimony, if a reasonable man were compelled to say what these men would have done all he could do would be guess, and a guess or supposition has no proper place in judicial administration. See Louisville & N. R. Co. v. Mann's Adm'r, 227 Ky. 339, 13 S. W. (2d) 257.

Exactly the same argument that is made here was made in Louisville & N. R. Co. v. Benke's Adm'x, 164 Ky. 798, 176 S. W. 212. Mrs. Benke was killed at a crossing on Saratogo street in the city of Newport. When her peril was seen the alarm was given, and the engineer applied the brakes in emergency but did not whistle because he did not have time, which is what the engineer says in this case, and in the Benke Case this court held Mrs. Benke's own negligence caused her

death. We cannot distinguish that case from this one. See, also, 52 C. J. p. 252, sec. 1839, and p. 452, sec. 2025.

In Collette v. B. & M. R. R., 83 N. H. 210, 140 A. 176, 181, a case much like this one, the court said:

"Assuming that it might reasonably be found that the fireman should have given a warning to whistle, or that the engineer, without such warning, should have whistled instead of applying the brakes, it is only conjecture to say that a whistle would have prevented the collision."

The court in a somewhat similar case, Rollison v. Wabash R. Co., 252 Mo. 525, 160 S. W. 994, 999, said:

"To predicate negligence on two seconds of time is in and of itself a monumental refinement. We cannot adjudicate negligence on such pulse beats and hair-splitting, such airy nothings of surmise."

We are fully aware that there are cases where it was held the whistle should have been blown, for example, see Texas & N. O. Ry Co. v. Hart (Tex. Civ. App.) 294 S. W. 978, but in that case the engineer saw the automobile when it was 30 or 40 feet from the track, on an upgrade and a rough road, and he saw it was going to attempt to cross in front of the train. In Georgia R. & Banking Co. v. Wallis, 29 Ga. App. 706, 116 S. E. 883, the fireman saw Wallis when he was 20 or 30 feet from the track and said nothing. The facts are so different in the last two cases, from the facts in this one, as to make them of no persuasive effect.

## Contributory Negligence

These men were engaged in a joint enterprise. The next day was Sunday. Monday was Decoration Day, a holiday. They had a borrowed car, freshly filled with gas and oil, and they were going home. As they crossed this south track, the north track was in full view and only 13 feet away, and north of it were two waiting automobiles, which were notices to them of something wrong; yet on they came.

It was as much the duty of the decedents to have seen the train as it was the duty of those in charge of the train to see them. Their own negligence placed them in a position of danger from which the servants of the defendants were unable by ordinary care to

rescue them, and thus they died as a result of their own negligence. The defendants were entitled to directed verdicts. 52 C. J. p. 492, sec. 2056.

The judgments are reversed.

The whole court sitting.

Perry, J., dissenting.